ALICE T. KINNEY, GUARDIAN, v. A. E. WATSON.

No. 6709.

**Bailment—Gift.**—See facts evidencing a bailment of money, not a gift.

APPEAL from Falls. Tried below before Hon. Eugene Williams. The facts are given in the opinion.

*P. P. Norwood* and *B. H. Rice,* for appellant.—When money is deposited with another for the use and benefit of the depositor, subject to his own order and control, there being no intent to vest title in the depositary, but the same being done to conceal the knowledge of same from his creditors, he being in debt and having no other property subject thereto, and who, while said money is thus deposited, engaged in business with the bank where said money is deposited, the bank furnishing the money for him to operate upon with the understanding between the bank, himself, and .the depositary that in the event of loss in the business this fund so deposited should stand as a collateral security to indemnify the bank, and not to be drawn out except by consent of the bank, and the depositor dies before the business with the bank is closed, but owing nothing to the bank, in such case the heirs at law of such depositor may recover the same from said depositary. Woodard v. Hubbard, 57 Am. Dec., 310; Rev. Stats., art. 2465; McKenna v. Kelso, 3 N. W. Rep., 152; 2 Kent, 12 ed., *439, *440; Bouv. Law Dic., "Gift;" Bouv. Law Dic., "Transfer;" 1 Pome. Eq., secs. 403, 404, note 2, p. 452; 2 Pome. Eq., secs. 929, 939–942; Tracey v. Talmage, 14 N. Y., 162; Prescott v. Noriss, 32 N. H., 101; White v. Franklin Bank, 22 Pick., 186; Belany v. Belansey, 6 Fla., 103; Hunt v. Butterworth, 21 Texas, 133.

*Goodrich & Clarkson,* for appellee. —The mere delivery of current money passes the property therein to the vendee or transferree, and he becomes the debtor of the assignor of the funds or not according to the contract, express or implied, on which the fund was paid or delivered; and one so paying out to another money for the purpose of hindering, delaying, or defrauding his creditors who brings suit for its recovery must bring suit, as the plaintiff does in this case, upon the contract and to enforce the contract, and a contract or transaction made for such a purpose can not be enforced in the courts. The courts will have nothing whatever to do with it, but leave the parties where they put themselves. Neither the fraudulent vendor nor his heirs can recover, or in any way enforce a contract made for such a purpose. Blum v. Goldman, 66 Texas, 622; Fowler v. Stoneum, 11 Texas, 501; Danzey v. Smith, 4 Texas, 411; Hoeser v. Kraeka, 29 Texas, 453; Roby v. West, 17 Am. Dec., 423, 424; Miller v.

Davidson, 44 Am. Dec., 715; James v. Bird, 31 Am. Dec., 668; Freeman v. Sedwick, 46 Am. Dec., 650.

ACKER, PRESIDING JUDGE.—Alice T. Kinney, guardian of the person and estate of Mary M. Maxey, a minor and sole heir of E. E. Maxey, deceased, brought this suit against A. E. Watson on the 27th day of April, 1887, to recover $1400 which she alleged the ancestor of her ward had deposited with the defendant.

The defendant set up in his answer that the deceased E. E. Maxey had transferred and delivered the money to him to defraud, hinder, and delay his creditors. That he had paid $200 of the money to Maxey's mother; that the balance he would pay to Maxey's mother in accordance with Maxey's dying request.

The case was tried without a jury, and the judge found:

"1.  That E. E. Maxey, a citizen of Falls County, died intestate April 23, 1885, and the plaintiff, now Mary Maxey, was his sole heir at law.

"2.  That in May, 1884, said Maxey was indebted to Mensing Brother & Co., of Galveston, in the sum of about $2200, valid indebtedness, which was then due and owing; that he had no other property than the amount of $1700 in money.

"3.  That without consideration and with intent to hinder, delay, and defraud his said creditors, especially Mensing Brothers, he transferred and delivered $1400 of said money to the defendant Watson, which defendant Watson still has in his possession except the sum of $200 which said defendant paid to said Maxey's mother in January, 1886.

"Law:  I conclude that the plaintiff is not entitled to recover said sum or any part thereof, and that judgment be rendered for the defendant."

It appears from the evidence that Maxey took the $1400 to the bank of Marlin about the 1st day of May, 1884, and asked to deposit it there until he returned in the fall and resumed his business as cotton buyer: but Clark, the president of the bank, declined to receive the deposit, stating to Maxey as his reason for such refusal that he feared he might become involved in litigation with Maxey's creditors.

On the 7th day of May, 1884, Maxey, Watson, and Clark were at the bank together, and Clark, at the request of Maxey, counted the money, and Maxey then delivered the $1400 to Watson with the request that he keep it.  Watson deposited the money in the bank to his credit on a separate account from his own.  It was understood by the president and cashier of the bank and by Watson that while the money was in Watson's name on the books of the bank, it was placed there as a collateral security for the benefit of the bank in the event of a deficit in Maxey's account with the bank.

Clark, the president, testified that he supposed Maxey left the money with Watson for the purpose of keeping his creditors from knowing where

it was, so that he would have it to use in his business on his return in the fall; and both the president and cashier testified that had Watson attempted to check the money out during the cotton season of 1884 and 1885, while Maxey was doing his cotton business with the bank, during which time the bank was furnishing Maxey money to operate on, his checks would not have been honored. After the money was deposited with Watson, in August following Maxey returned to Marlin and resumed his business as cotton buyer, the bank furnishing him money, with the understanding that the money in Watson's hands should be held as collateral security for his account, which understanding was communicated by the president of the bank to Watson and acquiesced in by him. On the close of Maxey's account with the bank after his death there was a small balance to his credit.

The foregoing is the substance of the evidence explanatory of the manner and purpose of Maxey in depositing the money with Watson, from which it is clear to our minds that there was no transfer of the title to the money any more than there would have been if the bank had accepted the money on deposit when it was tendered by Maxey.

It is evident from the testimony that Maxey exercised control and dominion over the money after it was deposited with Watson, and his right to do so does not appear to have been questioned by Watson. Indeed, the defendant's answer admits Maxey's right to control and dispose of the money, and that he held the money simply as Maxey's bailee, for it is alleged in the answer that he paid $200 of the money to Maxey's mother and that he would pay the balance to her, in accordance with Maxey's dying request. Now, if the money was transferred to Watson and became his by its delivery under the circumstances and in the manner shown by the evidence, what right had Maxey to make any disposition of it by dying request or otherwise? The only testimony tending to show that Maxey deposited the money with Watson for the purpose of keeping his creditors from finding it was the statement of the witness Clark that he "supposed" it was left with Watson for that purpose, which was not evidence. Besides, this same witness testified that Maxey told him he hoped to be able to pay his creditors by shipping cotton to them during the season. Before the season was over he died, leaving his money on deposit with a trusted friend. We think the evidence fails to show more than that the money was deposited by Maxey with Watson as bailee, subject to Maxey's disposition and control.

Maxey having died intestate the money descended to and the ownership of it vested in the plaintiff's ward, his sole heir, and Watson, the bailee, had no right to pay any of it to any other person.

We think the court erred in its third finding of fact, and also in its conclusion of law.

As there seems to be no controversy about the facts, we are of opinion

that the judgment of the court below should be reversed and judgment here rendered in favor of appellant for $1400 and interest thereon at 8 per cent from the 30th day of March, 1887, the date of the plaintiff's demand on defendant for the money, as appears from the testimony of her attorney, Norwood, who made the demand for her.

*Reversed and rendered.*

Adopted June 10, 1890.