**WATTS v. GIBSON.**

No. 12377.

Court of Civil Appeals of Texas. Fort Worth.

Nov. 15, 1930.

778

John L. Poulter, of Fort Worth, for plaintiff in error.

C. T. Gettys, of Decatur, for defendant in error.

DUNKLIN, J.

Four life insurance policies were issued on the life of Mrs. Lucinda Watts, each of which named her son, Oscar W. Watts, as the sole beneficiary. The beneficiary paid the insurance premiums on all of those policies up to April 30, 1924—a period of about fifteen years—at which time he found that he was unable to pay further premiums, and in order to avoid a lapse of the policies and a loss of all benefits thereunder, he proposed to E. P. Gibson to convey to him a one-half interest in all the benefits to be derived from those policies upon the death of his mother if Gibson would assume and pay all premiums thereafter accruing on those policies up to the date of the death of Mrs. Lucinda Watts. Mrs. Lucinda Watts also gave her consent for her son to make that contract, and thereafter a contract in writing was executed by Oscar W. Watts and E. P. Gibson, by the terms of which Gibson obligated and bound

himself to pay all future premiums and dues on the four policies, and in consideration therefor Watts agreed to and did sell and convey to Gibson a one-half interest in all of those policies, and further agreed that on the death of his mother he would make all necessary proofs of her death and deliver to Gibson one-half of the proceeds collected on the policies. That agreement was executed by both parties on April 30, 1924. Thereafter, Gibson proceeded to pay the premiums on the policies as they fell due and kept up those payments without default until the death of Mrs. Lucinda Watts, which occurred on May 18, 1927. The payments so made by Gibson aggregated $759.55. After the death of Mrs. Lucinda Watts, proof of her death was duly furnished the respective companies in accordance with the agreement of Oscar W. Watts, and there was collected on the four policies the aggregate of $2968.25. On one of the policies the sum of $917 was paid to Gibson with the consent of Oscar W. Watts. The amounts collected on the other three policies were in each instance paid by check or draft to the order of Oscar W. Watts, and he indorsed the same over to Gibson, who collected the same.

E. P. Gibson was not related to Mrs. Lucinda Watts either by blood or by marriage.

This suit was instituted by Oscar W. Watts against E. P. Gibson, and in his petition the facts above set out were alleged. Plaintiff further alleged that defendant had no insurable interest in the life of the deceased, in that he was not related to her in any manner, and therefore the contract made between the parties evidencing a transfer by plaintiff to defendant of a one-half interest in the policies was illegal and void; that the money paid by defendant for premiums on the policies, to wit, $759.55, was advanced as a loan; that the defendant had collected and appropriated all the proceeds of the policies; that he was entitled to reimburse himself for the amount he had advanced to pay the premiums on the policies, and was also entitled to a further credit of $516.50 which he had paid to the plaintiff out of the proceeds; and that all over and above those two credits constituted usurious interest for the alleged loan, and plaintiff sought a recovery of such excess, together with a statutory penalty for usurious interest, aggregating the sum of $3,970.89.

Following a plea of general demurrer and general denial, the defendant pleaded specially the written contract between the parties noted above, the payment of premiums by the defendant in good faith and in reliance upon said contract, with the further allegation that after the policies were collected the plaintiff transferred to defendant one-half of the proceeds and thereby vested in defendant title and right thereto, all in pursuance of and for the purpose of carrying out his said written agreement theretofore made.

The defendant further pleaded the payment of premiums on the policies in the sum of $759.55, and the payment to the plaintiff of $515.56.

There was a further plea of certain offsets and counterclaims as against the plaintiff's demand, which will hereinafter be referred to and which the defendant sought to have allowed in reduction of any amount the plaintiff might otherwise show himself entitled to recover.

■ Plaintiff filed a supplemental petition in reply to defendant's answer, in which he specially pleaded that the insurance policies in question were all issued by fraternal benefit associations, and therefore the proceeds thereof were exempt and not subject to the offsets claimed by defendant under and by virtue of article 4847, Rev. Civ. Statutes. One of the offsets so pleaded by defendant was a promissory note purported to be executed by plaintiff, payable to the order of the First National Bank of Decatur, and which the defendant alleged he had acquired as assignee for a valuable consideration paid. As to that item plaintiff specially pleaded non est factum, and he also invoked the statute of limitation of four years as against it. The plea of non est factum was not verified, and therefore that defense need not be further noticed. Thomason v. Berry, 276 S. W. 185, by the Commission of Appeals.

A jury was impaneled to try the case, but when the evidence was concluded the court dismissed the jury and proceeded to determine the issues of fact as well as of law without its aid.

The findings of fact and conclusions of law by the trial court are in the record, and based thereon judgment was rendered denying plaintiff any recovery, from which judgment he has prosecuted this appeal by writ of error.

The following is taken from the findings of fact:

"That at the time the proceeds of said insurance was received plaintiff agreed with defendant that said proceeds should be divided equally between himself and defendant pursuant to and in accordance with the contract of date April 30th, 1924, above set out, and voluntarily placed all such funds in the hands and possession of said Gibson with the understanding and agreement that one-half of same belonged to said Gibson, and with the further understanding and agreement that there should be paid out of plaintiff's part a note for $239.50 and interest thereon held by defendant."

The testimony of plaintiff himself was ample to support that finding by the trial court. His testimony was also corroborated

by that of defendant, and there was no testimony to the contrary.

■■ Even though it be said that the contract originally made between the parties stipulating that defendant should have one-half the proceeds of the policies when collected in consideration of his payment of all the premiums accruing after the date of the contract was voidable as against public policy, within the purview of such authorities as Cawthon v. Perry, 76 Tex. 383, 13 S. W. 268; Lewy v. Gilliard, 76 Tex. 400, 13 S. W. 304; Goldbaum v. Blum, 79 Tex. 638, 15 S. W. 564, still defendant having complied with his obligations under that contract and the policies having been saved from total loss and later collected, raised at least a moral obligation on the part of plaintiff to abide by the same, and that moral obligation was a sufficient consideration to support the later assignment of one-half of the proceeds to the defendant after the same had been collected. Indeed, appellant has presented no contention to the contrary. And the assignment to defendant of a one-half interest in the proceeds of the policies after collection being legal and binding, the same constituted a waiver of any right of plaintiff to claim that the original written contract between him and defendant was void as against public policy. Colburn v. Coburn (Tex. Civ. App.) 211 S. W. 248; Floyd v. Patterson, 72 Tex. 202, 10 S. W. 526, 13 Am. St. Rep. 787; 6 R. C. L. p. 821, § 217.

■■ But the waiver just referred to above was not a waiver of plaintiff's right to claim the statutory exemption given by article 4847, of half of the proceeds of the policies as against the items of set-off pleaded by the defendant and allowed by the trial judge. The burden was upon plaintiff to prove facts necessary to show that the remaining half of the funds, after defendant's half had been deducted from the whole, was exempt under the statute from subjection to the payment of those offsets, all of which were shown to be just and lawful claims owing by plaintiff and of which defendant is the lawful owner and holder.

Article 4820 reads:

"Any corporation, society, order or voluntary association, without capital stock, organized and carried on solely for the mutual benefit of its members and their beneficiaries, and not for profit, and having a lodge system with ritualistic form of work and representative form of government, and which shall make provision for the payment of benefits in accordance with Article 4824 is hereby declared to be a fraternal benefit society."

Article 4847, in the same chapter of the statutes and which is invoked by plaintiff, is as follows:

"No money or other benefit, charity or relief or aid to be paid, provided or rendered by any such society shall be liable to attachment, garnishment, or other process, or be seized, taken or appropriated or applied by any legal or equitable process or operation of law to pay any debt or liability of a member or beneficiary or any other person who may have a right thereunder, either before or after payment."

Plaintiff offered in evidence two certificates, as follows:

"I, R. B. Cousins, Jr., Chairman of the Board and Commissioner of Life Insurance of the State of Texas do hereby certify that the instrument which is hereunto attached is a true, full and correct copy of certificate of authority of the Fraternal Aid Union, Lawrence, Kansas, for the year ending March 31, 1929.

"In Testimony Whereof I have hereunto subscribed my name officially, and have hereon impressed my Seal of Office at the City of Austin, in the State of Texas on this 1st day of June, A. D. 1928.

"[Seal.]        R. B. Cousins, Jr., Chairman, Board of Insurance Commissioners."

"This is to certify that the Fraternal Aid Union, Lawrence, Kansas, having required with all requirements of law relating thereto, is hereby authorized to pursue the business of Fraternal Benefit Society within this State for the year ending March 31, 1929.

"In Witness Whereof, I hereunto sign my name and affix my official seal at Austin, Texas, this 1st day of April, 1928.

"[Seal.]        R. B. Cousins, Jr., "Chairman of the Board."

The Fraternal Aid Union, Lawrence, Kan., named in said certificates, issued one of the policies in question, and the amount collected on that policy was $333.

Another certificate was offered, reading:

"Department of Insurance "State of Texas.

"This is to certify that the Fort Worth Mutual Benevolent Association of Texas, Fort Worth, Texas, having complied with all requirements of law relating thereto, is hereby authorized to pursue the business of Fraternal Benefit Society within this State for the year ending March 31, 1925.

"In Witness Whereof, I hereunto sign my name and affix my official seal at Austin, Texas, this 28th day of March, 1924.

"[Signature illegible] "Commissioner of Insurance."

On that policy there was collected $663.

■ Those certificates were the only evidence offered by plaintiff to prove that any of the four associations who issued the policies in question was a "Fraternal Benefit Society," within the meaning of the provisions of article 4820 and 4847, as specially pleaded by him. We conclude that the certificates so offered

were not competent evidence to prove that either the Fraternal Aid Union, Lawrence, Kan., or the Fort Worth Mutual Benevolent Association, was such a society as defined in article 4820 at the time of the issuance of their respective policies, which was some 15 or more years prior to the dates of either of these certificates, and that the trial court did not err in his finding to that effect. Henry v. Phillips, 105 Tex. 466, 151 S. W. 533; Couger v. Costello (Tex. Civ. App.) 10 S.W.(2d) 746; Feingold v. Lefkovitz (Tex. Civ. App.) 147 S. W. 346; Childers v. Pickenpaugh, 219 Mo. 376, 118 S. W. 453; Grand Lodge of Order of Sons of Hermann v. Prater (Tex. Civ. App.) 2 S.W.(2d) 500. And with no evidence to show that the insurers who issued the other two policies came within the provisions of those two statutes, it follows, of course, that there was no error in the court's failure to sustain plaintiff's contention that the proceeds collected from any of the policies came within the statutory exemption of article 4847. In this connection we deem it proper to note that plaintiff also introduced in evidence certificates similar to those referred to above, likewise issued by the board of insurance commissioners, showing that the "American Insurance Union of Columbus, Ohio," had complied with the requirements of the law relating thereto and was authorized to pursue the business of "Fraternal Benefit Society" within this state for the year ending March 31, 1928. But as appears in the trial court's findings and shown by uncontroverted proof that society did not issue any of the policies in question, but took over the business of the Fort Worth Mutual Life Association, who issued one of the policies in suit about the time that policy was paid, without assuming any of the obligations of the latter company and paid that policy solely by assessments against the members of the association who issued the policy; thus showing that the American Insurance Union merely acted as the agent of the Fort Worth Mutual Life Association in discharging its contract of insurance.

■ It thus appears that plaintiff failed to establish the alleged statutory exemption of his half of the proceeds from application to the satisfaction of such offsets pleaded by defendant as could be properly allowed. The offsets pleaded by defendant could be properly pleaded under the provisions of articles 2014 and 2015; nor was his right to do so challenged by plaintiff. The trial court allowed as offsets in favor of the defendant and against plaintiff's demand two judgments that had been rendered against E. P. Gibson, defendant in this suit, as garnishee, in two other suits that had been instituted against Oscar W. Watts, plaintiff in this suit. One of those suits was by W. A. Helm and H. M. Helm, and the other by E. H. Baumgaertner, both in the justice court, and in each of which

a writ of garnishment was sued out and served on E. P. Gibson, defendant in this suit. The amounts allowed as offsets on those two judgments were $150 on the suit first mentioned and $30.08 on the second. The uncontroverted testimony, including that of plaintiff himself, showed that those garnishment proceedings were had for the purpose of impounding proceeds collected on the insurance policies and then in the hands of E. P. Gibson; that plaintiff knew of that purpose on the part of said creditors, and after being informed by defendant of the service of such writs he employed counsel to look after his interest in those proceedings; that his counsel complied with plaintiff's request and filed some character of motion in one case, but took no steps to prevent judgments against the garnishee on the ground that the funds sought to be impounded were exempt from such process under article 4847, Rev. Civ. Statutes, which defense might have been then urged. Those facts, in substance, are embodied in the court's findings, and the same furnished a proper basis for the allowance of those judgments as offsets to plaintiff's suit. The following is taken from 28 Corpus Juris, p. 399:

"At any rate a judgment against a garnishee protects him against the suit of a third person claiming an interest, as assignee or otherwise, where such third person voluntarily became a party to the garnishment proceedings, or was interpleaded, or was given due notice of the proceedings and an opportunity to assert his rights therein regardless of whether or not he availed himself of the privilege. * * *

"Where a garnishee notified defendant to attend and make defense if he had any, a judgment against the garnishee will protect him, although he failed to defend on the ground of irregularity in the garnishment proceedings, or although he failed to disclose defendant's exemptions."

■ There is no merit in the contention that those judgments against Gibson as garnishee were dormant because execution was not issued thereon within one year after their rendition and that therefore they could not be allowed as offsets here. The right of offset is an equitable right. 24 R. C. L. pp. 803, 804. And one of the grounds of that relief is the insolvency of the party against whom the right is asserted. R. C. L. p. 806. Even if it be said that those judgments in garnishment are dormant, the holders thereof have the statutory right to revive them. The revival of them would involve additional cost to the garnishee and plaintiff would not profit thereby; and the final satisfaction of those judgments by the garnishee would result in a satisfaction pro tanto of the judgments against the plaintiff here, in the suits in which the garnishments were sued out. Furthermore, the evidence introduced conclusively showed

plaintiff to be insolvent, and a judgment against him on any of those offsets in other suits would be uncollectable. Those garnishments were sued out before judgments against the defendant in each of those cases were rendered; hence authorities cited by appellant to the effect that a dormant judgment will not support a garnishment have no application in this case. One of the reasons for allowing offsets as against plaintiff's suit is that a multiplicity of suits is thus avoided, which is a favored principle in both law and equity. 24 R. C. L. p. 799, § 9.

Other offsets pleaded by defendant were also allowed by the court, as follows: $243.88, the amount of principal and interest on a note held by defendant executed by plaintiff; $39 on account for rent incurred by plaintiff in favor of Mrs. N. W. Holcomb and duly transferred and assigned to defendant; $8.75 gas bill incurred by plaintiff and paid by defendant.

The total amount of offsets above shown was $462.43, and that sum added to the further sum of $516.50 paid to plaintiff by defendant out of the money collected, aggregates $978.93. And after charging that total against plaintiff, there was still left in defendant's hands out of plaintiff's half of the total collections made by defendant from the policies, to wit, $1,484.13, a balance of $505.20.

■■■■ The balance just shown was allowed as an offset in defendant's favor by reason of the note purchased by him from the First National Bank of Decatur for the principal sum of $420.70, dated July 14, 1924, due six months after date, drawing interest from date at the rate of 10 per cent. per annum, with the usual stipulation for 10 per cent. additional as attorney's fees. According to its terms, that note matured January 14, 1925. This suit was instituted May 15, 1929, four years and four months after the note matured, and defendant's answer setting up the note as an offset and counterclaim was filed May 28, 1929. 'It thus appears from the pleadings that the note was barred by the statute of limitation of four years and that defense was pleaded; and the court erred in not sustaining it and in allowing defendant an offset by reason thereof. In this connection we will add that there is no merit in the point made by defendants that the wording of the plea of limitation, strictly construed, was insufficient, for two reasons: First, defendant did not except to the plea on that ground; and, second, the same defense could have been made by exception to that counterclaim first asserted in defendant's answer, and in the determination of that defense the court could properly take notice of the dates on which the original petition and answer thereto were filed. And it is to be noted further that defendant pleaded said note not merely as an offset in the strict meaning of that term, but as a counterclaim

for principal, interest, and attorney's fees, thus treating it as a cross-action against the plaintiff with no allegations that he applied the same as a credit or offset against plaintiff after collecting the policies, and therefore there was no proper basis for the court's finding to that effect, which defendant seeks to sustain by authorities to the effect that a bank may apply deposits to the payment of the depositors' overdue notes payable to it, such as Traders' National Bank v. Cresson, 75 Tex. 298, 19 S. W. 819; Beatty-Folsom Co. v. Edwards (Tex. Civ. App.) 238 S. W. 340; Harper v. Bank (Tex. Civ. App.) 3 S.W.(2d) 552; Bulin v. Smith (Tex. Com. App.) 1 S.W. (2d) 591; Adams v. Houston National Bank (Tex. Com. App.) 1 S.W.(2d) 878. As to counterclaims see 24 R. C. L. p. 793 et seq.

■■■■ We overrule the assignment of error addressed to the action of the trial court in withdrawing the case from the jury after the evidence was introduced for the following reasons: First, the facts recited above and upon which we have concluded that the defendant established a valid defense to all of plaintiff's claims asserted in his pleadings, except as to the offset allowed by the court for the note which defendant purchased from the bank, were proven by uncontroverted evidence; and, second, the only issues which plaintiff requested to be submitted to the jury were as to whether two of the insurance companies, viz., the Fraternal Aid Union, of Lawrence, Kan., and the American Union, of Columbus, Ohio, were fraternal benefit associations while Mrs. Lucinda Watts carried insurance with them. And we may add further that the record shows no bill of exception or objection taken by the plaintiff to the action of the court in discharging the jury. Bulin v. Smith (Tex. Com. App.) 1 S.W.(2d) 591; Adams v. Houston Natl. Bank (Tex. Com. App.) 1 S.W.(2d) 878.

■■■■ The finding by the trial court that plaintiff assigned to defendant all his interest in the money collected on the policies for the purpose of concealing the same from his creditors could not of itself properly furnish any separate and independent basis for the judgment rendered, since such an arrangement constituted defendant a bailee only, and further he is in no sense authorized to represent other creditors. Kinney v. Watson, 77 Tex. 593, 14 S. W. 207; Block v. Darling, 140 U. S. 234, 11 S. Ct. 832, 35 L. Ed. 476; Knapp v. Knapp, 118 Mo. App. 685, 96 S. W. 295. Furthermore, defendant who at the time was cashier of the First National Bank of Decatur himself testified as follows:

"When the first check came in from the Fraternal Aid Union, he (plaintiff) asked me how he could get it fixed up to keep people he owed from jumping on him, and I suggested he leave it here at the bank in my hands, and

·to tell them you have not had a settlement yet. And told him just to tell them I am looking after this for you."

According to plaintiff's testimony that suggestion was agreed to by him and all the collections were handled in that way. The finding now under discussion was based solely on that testimony, and to allow the offsets by reason thereof would necessarily involve an enforcement of the agreement so made between plaintiff and defendant. And if defendant's right to the offsets pleaded by him depended solely upon the enforcement of that agreement he, undoubtedly, would be the loser. Article 3996, Rev. Civ. Statutes (Vernon's Ann. Civ. St. art. 3996); Floyd v. Patterson, 72 Tex. 202, 10 S. W. 526, 13 Am. St. Rep. 787; 12 R. C. L. p. 610. However, as shown above, the right of defendant to an allowance of offsets does not depend upon the enforcement of that illegal agreement.

For the reasons noted, the judgment of the trial court is so reformed as to award plaintiff a recovery against defendant for the sum of $505.20, with interest thereon from July 8, 1929, the date of the judgment below, at the rate of 6 per cent. per annum, and for costs of suit in the trial court; but the judgment of the trial court is in all other respects affirmed. The costs of appeal will be taxed against the defendant in the court below, appellee here.