**RESOLUTION TRUST CORPORA-TION As Receiver for First Savings Arkansas, S.A. Plaintiff,**

**v.**

**TEXAS MOLINE LTD., and Dean H. Maddox, Defendants.**

**Civil Action No. H–92–1692.**

United States District Court, S.D. Texas, Houston Division.

Jan. 21, 2000.

fees on a recurring and periodic basis, so that they cannot effectively be attached or levied upon by ordinary legal process, such as garnishment.

In his opposition to the motion for turnover relief, Maddox claims that the payments he receives are exempt from seizure as wages paid to him in master-servant relationships, rather than management and investment banking fees paid to him as an independent contractor.

This court GRANTS the applications for the three writs of garnishment. (Docket Entries No. 29, 30, and 31). This ruling moots the motions to dismiss the previously issued writs for lack of effective service. (Docket Entry No. 28). This court finds and concludes that the income VRG seeks by turnover order is not current wages for personal service exempt from seizure, but rather commissions and income to an independent contractor, properly subject to turnover. The reasons are set out below.

John C. Landon, Alonso & Cersonsky, Houston, TX, for plaintiffs.

Dean H Maddox, Houston, TX, pro se.

Trent L. Rosenthal, Boyar Simon et al, Houston, TX, for garnishees.

## MEMORANDUM AND ORDER

ROSENTHAL, District Judge.

Value Recovery Group ("VRG"), the current owner of the judgment previously rendered in this case, seeks to satisfy a portion of that unsatisfied judgment by proceeding against one of the judgment debtors, Dean H. Maddox ("Maddox"). VRG renews its applications for writs of garnishment against three business entities: T and N, Inc., Creme de la Creme Joint Venture, and Maddox Hotel Corporation. (Docket Entries No. 29, 30, and 31). VRG also applies for turnover relief against Maddox, seeking to seize money he periodically receives as management fees, accounting fees, administrative fees, and tax fees for services he renders to several different entities. (Docket Entry No. 32). VRG asserts that Maddox receives these

## I. The Applicable Legal Standard

The Texas Turnover Statute, Tex. Civ. Prac. & Rem. Code Ann. § 31.002 provides in part:

(a) A judgment creditor is entitled to aid from a court of appropriate jurisdiction through injunction or other means in order to reach property to obtain satisfaction on the judgment if the judgment debtor owns property, including present or future rights to property, that:

(1) cannot readily be attached or levied on by ordinary legal process; and

(2) is not exempt from attachment, execution, or seizure for the satisfaction of liabilities.

(b) The court may:

(1) order the judgment debtor to turn over nonexempt property that is in the debtor's possession or is subject to the debtor's control, together with all documents or records related to the property, to a designated sheriff or constable for execution;

. . .

(3) appoint a receiver with the authority to take possession of the nonexempt property, sell it, and pay the proceeds to the judgment creditor to the extent required to satisfy the judgment.

■ The statute is the procedural device " 'by which judgment creditors may reach assets of a debtor that are otherwise difficult to attach or levy on by ordinary legal process.' " *RTC v. Smith*, 53 F.3d 72, 77 (5th Cir.1995) (quoting *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 224 (Tex.1991)). It allows a court to reach assets owned and subject to the control of a judgment debtor. *See Norsul Oil & Mining Ltd. v. Commercial Equip. Leasing Co.*, 703 S.W.2d 345, 349 (Tex.App.— San Antonio 1985, no writ).

■ The Fifth Circuit has held that under the Texas turnover statute, while there are no specific required standards for pleadings and proof in claiming property to be exempt from levy or execution, a debtor must in most cases allege or make known tangible facts necessary to show that a particular asset falls within a statutorily exempt classification. *Santibanez v. Wier McMahon & Co.*, 105 F.3d 234, 239 (5th Cir.1997); *see also Lozano v. Lozano*, 975 S.W.2d 63, 67 (Tex.App.—Houston [14th Dist.] 1998, writ denied) (burden of proof of exemption is on judgment debtor) (citing *Rucker v. Rucker*, 810 S.W.2d 793, 795–96 (Tex.App.—Houston [14th Dist.] 1991, writ denied); *Roosth v. Roosth*, 889 S.W.2d 445, 459–60 (Tex.App.—Houston [14th Dist.] 1994, writ denied)). The " 'mere statement that the property is exempt is but a conclusion of law and unavailing.' " *Id.* (quoting *State ex rel. Bartol v. Justice of the Peace Court of Stanford Township*, 102 Mont. 1, 55 P.2d 691, 692 (1936)). "The Texas courts' approval of these pleading requirements is implied by their adoption of the general rule that the party who claims or alleges that property is exempt has the burden of producing evidence to show facts establishing the applicability of the statutory exemption." *Id.* (citing *Roosth*, 889 S.W.2d at 459–60;

*Jacobs v. Adams*, 874 S.W.2d 166 (Tex. App.—Houston [14th Dist.] 1994, no writ); *Watts v. Gibson*, 33 S.W.2d 777 (Tex.Civ. App.—Fort Worth 1930, no writ); *Dale v. Finance Am. Corp.*, 929 S.W.2d 495 (Tex. App.—Fort Worth 1996, writ denied); *Rucker*, 810 S.W.2d 793).

Under the applicable law, Maddox, as the party claiming the exemption, has the burden of proving that the fees and income at issue are exempt wages paid to him as an employee.

## II. The Record as to the Fees and Income

VRG has submitted evidence that Maddox does business as the Maddox Interests, a sole proprietorship. VRG asserts that Maddox "receives periodic management fees, accounting fees, administrative fees, and tax fees" for services rendered to the following entities: (a) Maddox Hotel Corporation/Lexington Hotel Suites; (b) Maddox Hotel II, L.L.C./Lexington Hotel; (c) New Bexar County Jail; (d) Creme de la Creme Joint Venture; (e) Maddox Equipment Leasing; and (f) T and N, Inc.

VRG specifically seeks turnover of the following:

1. All Fees paid to and/or received by Mr. Maddox personally and doing business as the Maddox Interests for services rendered to: (a) Maddox Hotel Corp./Lexington Hotel Suites; (b) Maddox Hotel II, L.L.C./Lexington Hotel; (c) New Bexar County Jail; (d) Creme de la Creme Joint Venture; (e) Maddox Equipment Leasing; and (f) T and N, Inc. (a.k.a. T & N, Inc.).

2. The value of any Fees paid by: (a) Maddox Hotel Corp./Lexington Hotel Suites; (b) Maddox Hotel II, L.L.C./Lexington Hotel; (c) New Bexar County Jail; (d) Creme de la Creme Joint Venture; (e) Maddox Equipment Leasing; and (f) T and N, Inc. (a.k.a. T & N, Inc.) to other parties for the benefit of Dean H. Maddox and the Maddox Interests.

(Docket Entry No. 32, pp. 2–3). VRG also seeks "the investment banking fee Mr. Maddox will receive from his work on the Tidewater project in Waco, Texas at such time as his fee may be paid him." (Docket Entry No. 32, p. 3).

VRG submitted evidence that included Maddox's deposition testimony, his 1997 federal income tax return, and a May 1999 letter from the Maddox Interests soliciting investment in the real estate development project in Waco, Texas. VRG asserts that the evidence shows that Maddox's income from the entities for which he provided financial services through Maddox Interests is nonexempt.

Maddox testified that after a career in public accounting, followed by thirteen years as chief financial officer of Tenneco, Inc. and sixteen years of heading his own investment syndication company, he formed Maddox Interests, a "small financial firm" with its own offices. Through Maddox Interests, Maddox provides services as an administrative partner or a general partner to investment organizations. (Docket Entry No. 32, Ex. B, p. 5). Through Maddox Interests, Maddox provided financial, accounting, management, and tax services to Creme de la Creme Joint Venture, T & N, Maddox Hotels II, L.L.C., Maddox Hotel Corporation, New Bexar County Jail, and Maddox Equipment Leasing, and investment banking services to Tidewater. It is the payments by these entities for the services Maddox provides that are at issue in this proceeding.

The evidence discloses the following information about the entities at issue:

**Maddox Hotel Corporation and Maddox Hotel II, L.L.C.** Maddox holds an 80 percent ownership interest in Maddox Hotel Corporation. He receives management fees from Maddox Hotel Corporation for managing a hotel in Dallas, Texas. The fees, based upon available revenues, are in the approximate amount of $4,000 per month. Maddox has a management contract. He spends one day each week at the

Dallas hotel. (*Id.*, p. 21). The Maddox Hotel Corporation comptroller writes the check to pay Maddox, but at Maddox's instruction. (*Id.*, pp. 24–25). Maddox also performs a similar job under a management contract for a different hotel in Arlington, Texas, for Maddox Hotel II, L.L.C. Maddox held a 20 to 30 percent interest in Maddox Hotel II, L.L.C., through Maddox Financial Corporation II, a Subchapter S corporation in which he is the only stockholder. Maddox receives approximately $2,000 per month for his work for Maddox Hotel II, L.L.C., depending on the availability of cash from the hotel operations.

**New Bexar County Jail.** Maddox's financial interest in this project, a record storage center, was lost to foreclosure. He "still administratively manage[s]" the project, under the partnership agreement, by preparing the monthly financial statements, preparing the tax returns, paying the mortgage, and collecting the rental payments. As a management fee, the project pays a portion of Maddox's liability and property insurance costs, valued at approximately $3,000 per year. (*Id.*, pp. 35–37).

**Creme de la Creme Joint Venture.** Maddox is the general partner in this child care facility. He no longer has a financial interest in the venture. Maddox performs the bookkeeping, collects the revenue, pays the bills, and issues monthly financial statements and quarterly reports, for which he is paid $2,000 each month. Maddox does not personally perform the work, but rather has three employees in his office that "do all this kind of work." (*Id.*, p. 38). Maddox's monthly check from Creme de la Creme is written by the comptroller at his own office, signed by that comptroller and by Maddox, then deposited in the Maddox Interests operating account. (*Id.*, p. 39).

**Maddox Equipment Leasing.** Maddox is paid $200 per month as an ac-

counting fee. Maddox writes the check in his office out of money received from the management company that manages the rail cars, after paying the owners of the cars their share. (*Id.*, p. 39).

**T & N, Inc.** Maddox receives accounting and tax fees for overseeing T & N, Inc., an entertainment business in Dallas that owns a nightclub and restaurant, for which Maddox does accounting and tax work. (*Id.*, p. 19). This entity is to pay Maddox $3,000 per year but is $45,000 in arrears. (*Id.*, at 22). Maddox has a 25 percent participation in T & N. (*Id.*, p. 64).

On Maddox's 1997 federal income tax return, he reported the management fees, accounting fees, and tax return preparation fees earned through Maddox Interests, on Schedule C, as profits or losses from business, rather than as wages, on Schedule A. (*Id.*, p. 87). The Schedule C report also included investment banking fees Maddox received from raising equity in different projects, such as the Tidewater project in Waco, Texas.

In his opposition to turnover, Maddox asserts that Maddox Hotel Corp. no longer owns the Dallas hotel, the only asset it had held. As to the payments received from Creme de la Creme, T & N, Maddox Hotel II, L.L.C., New Bexar County Jail, Ltd., Tidewater VLP, and Maddox Interest Equipment Leasing, Maddox asserts that the amounts received are "in the form of wages for my continuing personal services . . . . [which] are substantially identical to work performed within other business organizations by staff accountants and staff financial specialists." (Docket Entry No. 34, Ex. 1). He also asserts that the fees that he has in the past characterized as investment banking fees are "also wages for work typically performed in companies by the employee who functions as the Treasurer or Controller in a master-servant relationship for arranging bank financing and other operating funds." (*Id.*). Maddox asserts that to clarify the nature of the money he is paid, the entities will in the future place him on the payroll records as a part-time employee and make future payments with deductions for payroll taxes and the submission of W–2 forms. However, he concedes that in the past, the entities have not treated him in their payroll records as a part-time employee.

## III. Analysis

■■■ To qualify for a wage exemption under Texas law, Maddox must allege and prove concrete facts showing that he was receiving current wages for personal services from a particular person with whom he had an employer/employee relationship. *See* TEX. CONST., art. XVI, sec. 28; *Brasher v. Carnation Co.*, 92 S.W.2d 573 (Tex. Civ.App.—Austin 1936, writ dism'd); *see also* TEX. PROP. CODE ANN. § 42.001 (Vernon Supp.2000); *DeVore v. Central Bank & Trust*, 908 S.W.2d 605 (Tex.App.—Fort Worth 1995, no writ). The critical test for distinguishing an employee from an independent contractor is whether the employer has the right to control the progress, details, and methods of operations of the employee's work. *See Thompson v. Travelers Indem. Co.*, 789 S.W.2d 277, 278 (Tex. 1990) (citing *Newspapers, Inc. v. Love*, 380 S.W.2d 582, 585–90 (Tex.1964)); *cf. Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323–24, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992) ("In determining whether a hired party is an employee under the general common law of agency, we consider the hiring party's right to control the manner and means by which the product is accomplished.") (quoting *Community for Creative Non–Violence v. Reid*, 490 U.S. 730, 751, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989)). No one fact is dispositive of the issue, but the "right to control" test is clearly the "master test" for determining the nature of a professional working relationship. Under this test, an employer/employee relationship exists when an alleged employer retains the "right to control" the manner and means by which an alleged employee performs his services. *Darden*, 503 U.S. at 323, 112 S.Ct. 1344.

■■■ Some of the factors courts consider in making this determination include: (1)

the independent nature of the business; (2) the employer's obligation to furnish necessary tools, supplies, and materials to perform the job; (3) the employee's right to control the progress of the work, except for the final result; (4) the length of time of the employment; and (5) whether the employee is paid by time or by the job. *Bennack Flying Serv., Inc. v. Balboa,* 997 S.W.2d 748 (Tex.App.—Corpus Christi 1999, writ dism'd) (citing *Pitchfork Land & Cattle Co. v. King,* 162 Tex. 331, 346 S.W.2d 598, 603 (1961); *Alvarado v. Old Republic Ins. Co.,* 951 S.W.2d 254, 259 (Tex.App.—Corpus Christi 1997, no writ); *Crow v. TRW, Inc.,* 893 S.W.2d 72, 78 (Tex.App.—Corpus Christi 1994, no writ); *Sherard v. Smith,* 778 S.W.2d 546, 548 (Tex.App.—Corpus Christi 1989, writ denied)).

The evidence in regard to these factors, including the critical factor of who controlled the progress and details of the work, is as follows:

1. **Nature of the Business**. Maddox provides a variety of financial, tax, accounting, management, and investment banking services for different investment and business entities. Maddox performs some of the services himself and hires employees to do much of the work.

2. **Tools, Supplies, and Material Furnished**. Maddox works primarily out of his own office. He is reimbursed by the different partnerships and other entities for copy costs, postage, supplies, and travel costs.

3. **Control of the Work**. Maddox works pursuant to management contracts or under partnership agreements. Maddox does not assert that the different entities instructed him as to his work hours or who he was to hire to carry out their work. Maddox, not the partnerships, joint venture, or entities, made the work assignments to his own employees and directed and controlled their work.

4. **Length of Employment**. Indefinite.

5. **Paid by Time or Job**. Maddox is paid on a periodic, recurring basis, for work performed under the different contractual arrangements.

In addition to these factors, this court notes that the management contract under which Maddox provided services for Maddox Hotel II, L.L.C. was with Maddox Financial Corporation II, not Maddox or Maddox Investments. That management contract specified that Maddox Financial Corporation II was employed as an agent and manager to operate a hotel, and not in any other relationship. (Docket Entry No. 32, Ex. E).

This court also notes that until VRG moved for turnover relief and filed its brief setting out its legal theory in support of its application, Maddox did not appear on the payroll records of any of these entities as an employee who received a W–2 form. The fact that Maddox did not report his income from the entities as wages on his federal income tax return for the taxable year 1997 is consistent with his status as an independent contractor. The fact that Maddox will in the future report the fees and income he receives from the entities as wages on his federal income tax returns is not determinative, particularly where, as here, in the past he reported the same income for the same work as business income on Schedule C, that is, for work undertaken as an independent contractor.

A worker's investment in and control over his work facilities is clearly associated with status as an independent contractor, as is the fact that the worker retained personnel under his control. In this case, Maddox clearly was responsible for his own offices and also retained personnel whose terms and conditions of employment he fixed unilaterally. These factors are consistent with Maddox's status as an independent contractor with respect to the fees and income at issue.

The long-term relationships between Maddox and the entities and the fact that Maddox's work was a part of the entities' regular business are consistent with his

**650**

argument that he is an employee. However, these facts are insufficient to outweigh the evidence that Maddox was professionally associated with the entities as an independent contractor.

## IV. Conclusion

This court concludes that Maddox has not met his burden of showing that the income and fees he periodically receives from the entities at issue are exempt from seizure as wages. This court therefore GRANTS VRG's application for turnover. VRG's request for oral argument (Docket Entry No. 36) regarding the Turnover Motion is therefore MOOT. VRG has not submitted proof of the reasonableness of the fees it seeks or the amount of time reasonably spent; its request for attorneys' fees is DENIED at this time.