United States Court of Appeals,

Fifth Circuit.

No. 95-20312.

Alfredo L. SANTIBANEZ, M.D.; Guadalupe G. Santibanez; Latin American Medical and Surgical Clinic, P.A., Plaintiffs-Appellees,

v.

WIER McMAHON & CO., et al., Defendants,

Billy M. Thompson, Defendant-Appellant.

Feb. 12, 1997.

Appeal from the United States District Court for the Southern District of Texas.

Before BENAVIDES, STEWART and DENNIS, Circuit Judges.

DENNIS, Circuit Judge:

In this case, Defendant-Appellant Billy M. Thompson, a judgment debtor, appeals from the District Court's "turnover" order requiring him to describe and value all his assets; claim exemptions by stating the character of the exempt property and the legal basis for each exemption; and deliver to a receiver his nonexempt assets. Thompson also appeals from the District Court's order holding him in contempt for failure to comply with the court's decree. The orders appealed from arose from actions by the Plaintiffs-Appellees as judgment creditors to enforce a money judgment against Thompson for damage caused them by Thompson's fraud and breach of fiduciary duties violative of the Employee Retirement Income Security Act ("ERISA"). 29 U.S.C. §§ 1001, *et seq.* We affirm, holding that: (1) we have jurisdiction of the appeal, and (2) the trial court had jurisdiction to hold defendant in contempt. Further, we conclude that the trial court did not abuse its discretion in determining that: (3) plaintiffs proved that defendant owned or controlled present or future rights to property; (4) defendant failed to carry his burden of pleading and producing evidence to show that his property was exempt from seizure; and, (5) defendant intentionally and willfully refused to comply with the court's order and placed himself in contempt of court.

Facts and Proceedings Below

1

The District Court, after a bench trial, rendered a judgment in favor of the Plaintiffs-Appellees, Alfredo L. Santibanez, Guadalupe G. Santibanez, and the Latin American Medical and Surgical Clinic, P.A. (collectively: "Santibanez"), on July 14, 1994, against Billy M. Thompson and others for the principal sum of $618,881.36. The judgment was based on the District Court's findings that Thompson and other defendants had caused Santibanez financial losses by their ERISA violations involving fraud and breaches of fiduciary duties.

Seven months later on February 23, 1995, Santibanez, claiming to have been frustrated in attempts to collect on the judgment, applied to the District Court for post-judgment relief. Santibanez asserted that garnishment had netted only $42.36 and that Thompson held nonexempt property which could not be obtained through ordinary legal means. Following a hearing on April 3, 1995, at which Thompson was represented by counsel but did not personally appear, the court issued a "turnover" order on April 7 requiring Thompson to describe and value his assets, classify each asset as exempt or nonexempt, and give the legal basis for each exemption by April 11. The court also appointed a receiver to take possession and sell the nonexempt assets.

Thompson failed to meet the April 11 deadline and indicated through his attorney, in a letter to the receiver, that he considered the court's order "unenforceable." On June 14, 1995, the receiver moved the court to hold Thompson in contempt for violating the court's order. The court directed the receiver to submit a report by October 23 compiling evidence of the alleged violations of the April 7 order. On October 23, the receiver filed a report which delineated numerous violations of the order, including: failure to provide information and failure to adequately describe and disclose the location of assets; additionally, it alleged that Thompson had transferred assets to circumvent the court's order. Thompson filed a written response to the report simply denying all allegations.

On October 30, a n to hold Thompson in contempt or to impose other sanctions. Thompson was present, represented by retained counsel, and was afforded an opportunity to testify, present evidence, and cross-examine the receiver. Thompson and his attorney did not take advantage of this opportunity but chose to present only argument by counsel. In the absence of any evidentiary

2

showing by Thompson, the court accepted the receiver's presentation as establishing that the judgment debtor owned or controlled substantial nonexempt property that he had concealed; deliberately failed to describe, value, or turn over; and/or, fraudulently transferred. Based on these findings, the court held Thompson in contempt for willfully refusing to comply with the court's order, sentenced him to 30 days in jail, and ordered that he be incarcerated indefinitely pending his full compliance.

## Discussion

Thompson appealed and makes a number of arguments questioning the validity of both the "turnover" order and the subsequent finding of contempt. Santibanez argues that this court lacks jurisdiction to entertain Thompson's appeal. We conclude that both parties' arguments are without merit.

### 1.

Santibanez contends that we do not have jurisdiction of Thompson's appeal from the "turnover" decree because it is not a final judgment. However, the courts of appeals have jurisdiction of appeals from "[i]nterlocutory orders appointing receivers, or refusing orders to wind up receiverships or to take steps to accomplish the purposes thereof, such as directing sales or other disposals of property." 28 U.S.C. § 1292(a)(2). In its decree, the court appointed a receiver to, *inter alia,* "take possession of and sell the non-exempt assets of [Thompson] to apply the proceeds to the judgment...." Consequently, because the order appointed a receiver and directed the sale and disposal of property, it is appealable. *Resolution Trust Corp. v. Smith,* 53 F.3d 72, 77 n. 2 (5th Cir.1995); 7 James Moore *et al.,* Moore's Federal Practice ¶ 66.04[3](2d. ed.1996)(citing *Gulf Refining Co. v. Vincent Oil Co.,* 185 F. 87 (5th Cir.1911)).

### 2.

Thompson argues that the contempt order is invalid because the District Court lost jurisdiction over enforcement of its judgment when Thompson appealed. This argument is without merit. A district court has continuing jurisdiction in support of its judgment, *R.T.C. v. Smith,* 53 F.3d

3

at 76, and "[u]ntil the judgment has been properly stayed or superseded, the district court may enforce it through contempt sanctions." *Id.* (quoting *Alberti v. Klevenhagen,* 46 F.3d 1347, 1358 (5th Cir.1995)(quoting *United States v. Revie,* 834 F.2d 1198, 1205 (5th Cir.1987), *cert. denied,* 487 U.S. 1205, 108 S.Ct. 2845, 101 L.Ed.2d 882 (1988)))(internal quotations omitted).

### 3. and 4.

Thompson contends in interrelated arguments that the District Court erred in entering the "turnover" order of April 7, 1995, because: (i) there was no evidence that he owned property on that date that was not exempt from attachment and which could not readily be attached; and, (ii) it required him to turn over to the receiver commissions and earnings which were exempt. The arguments are without merit.

The Texas "Turnover" Statute, Tex. Civ. Prac. & Rem.Code Ann. § 31.002, in pertinent part, provides:

> (a) A judgment creditor is entitled to aid from a court of appropriate jurisdiction through injunction or other means in order to reach property to obtain satisfaction on the judgment if the judgment debtor owns property, including present or future rights to property, that:
>
> > (1) cannot readily be attached or levied on by ordinary legal process; and
> >
> > (2) is not exempt from attachment, execution, or seizure for the satisfaction of liabilities.
>
> (b) The court may:
>
> > (1) order the judgment debtor to turn over nonexempt property that is in the debtor's possession or is subject to the debtor's control, together with all documents or records related to the property, to a designated sheriff or constable for execution;
> >
> > * * *
> >
> > (3) appoint a receiver with the authority to take possession of the nonexempt property, sell it, and pay the proceeds to the judgment creditor to the extent required to satisfy the judgment.

The statute is the procedural device " "by which judgment creditors may reach assets of a debtor that are otherwise difficult to attach or levy on by ordinary legal process.' " *R.T.C. v. Smith,* 53 F.3d at 77 (quoting *Beaumont Bank, N.A. v. Buller,* 806 S.W.2d 223, 224 (Tex.1991)). It allows the court to reach assets owned and subject to the control of a judgment debtor, even if those assets

4

are in the hands of a third party. *Norsul Oil & Mining Ltd. v. Commercial Equip. Leasing Co.,* 703 S.W.2d 345, 349 (Tex.Ct.App.1985). A trial court's judgment as to whether issuance of a turnover order was justified is reviewed under an abuse of discretion standard and may be reversed only if the court has acted in an unreasonable or arbitrary manner. *Beaumont Bank, N.A. v. Buller,* 806 S.W.2d 223, 226 (Tex.1991). A turnover order, even if "predicated on an erroneous conclusion of law, will not be reversed for abuse of discretion if the judgment is sustainable for any reason." *Id.* (citing *Buttles v. Navarro,* 766 S.W.2d 893, 894-95 (Tex.Ct.App.1989)).

There does not appear to be any Texas statute specifically providing standards for pleadings and proof in claiming property to be exempt from levy or execution. In general, a debtor, although not bound by technical pleading requirements, must allege or make known tangible facts necessary to show that a particular asset falls within a statutorily exempt classification. *E.g., Schuler v. Langdon,* 433 N.E.2d 841 (Ind.Ct.App.1982); *State ex rel. Bartol v. Justice of Peace Court,* 102 Mont. 1, 55 P.2d 691 (1936); *Bradley v. Earle,* 22 N.D. 139, 132 N.W. 660 (1911). The "mere statement that the property is exempt is but a conclusion of law and unavailing." *State ex rel. Bartol,* 55 P.2d at 692 (citing *Paulson v. Nunan,* 64 Cal. 290, 30 P. 845 (1883)).

The Texas courts' approval of these pleading requirements is implied by their adoption of the general rule that the party who claims or alleges that property is exempt has the burden of producing evidence to show facts establishing the applicability of the statutory exemption. *Roosth v. Roosth,* 889 S.W.2d 445 (Tex.Ct.App.1994); *Jacobs v. Adams,* 874 S.W.2d 166 (Tex.Ct.App.1994); *Watts v. Gibson,* 33 S.W.2d 777 (Tex.Ct.App.1930); *see also Dale v. Finance America Corp.,* 929 S.W.2d 495 (Tex.Ct.App.1996); *Rucker v. Rucker,* 810 S.W.2d 793 (Tex.Ct.App.1991).

The court in *Roosth* did not depart from these principles, although at one point it broadly stated that "not all exemptions require proof." *Roosth,* 889 S.W.2d at 459. The *Roosth* court recognized that a party asserting an exemption bears the burden of establishing entitlement to the exemption and rejected the debtor's argument that a post-judgment creditor must prove the non-existence of an exemption. *Id.* & n. 4. The debtor claimed an exemption for life insurance

5

policies, and it was clear, from either the face of the parties' pleadings or evidence of the policies themse the debtor was not relieved of his obligations to plead facts and produce evidence that showed that the particular assets in question fell within an exempt statutory class.

Thompson argues that the creditor has the burden of proving that the property is nonexempt, relying on *Brink v. Ayre,* 855 S.W.2d 44 (Tex.Ct.App.1993), and *Sloan v. Douglass,* 713 S.W.2d 436 (Tex.Ct.App.1986). However, this court applies the latest and most authoritative expression of state law applicable to the facts of a case. *See Lamarque v. Mass. Indem. & Life Ins. Co.,* 794 F.2d 194, 196 (5th Cir.1986). Accordingly, we conclude that the general rule set forth in *Jacobs, Watts, Dale, Rucker,* and *Roosth,* that the party who claims the exemption has the burden of proof, is applicable to this action.

Santibanez made a sufficient showing that Thompson owned or controlled present or future rights to property to warrant the District Court's exercise of its discretion to issue the "turnover" order. Santibanez applied to the court for relief alleging, *inter alia,* that:

3. Applicants have reason to believe and do believe based on post-judgment interrogatories, deposition of Thompson's assistant, Lisa LaBaff, and investigation that Respondents own non-exempt property as follows:

(1) accounts receivable for insurance commissions and renewal commissions for the prior sale of life, disability and annuity products;

(2) diamond Rolex watch;

(3) gun collection;

(4) antique firearms;

(5) coin collection;

(6) men's jewelry;

(7) stamp collection; and

(8) stock in Billy M. Thompson, P.C.

4. Respondents own non-exempt personal property of a nature and type which cannot be attached or executed upon by ordinary legal means to satisfy the judgment. Applicants have attempted to garnish renewal commissions, but have been able to reach only $42.36 in the possession of Texas Life Insurance Company at the time of garnishment. Due to the recurring nature of renewal commission payments, garnishment is not an effective means of

satisfying the judgment. In addition, Lisa LaBaff, Mr. Thompson's assistant, has testified in her deposition that a bank account was opened in the name of Mac Consulting, Inc. and used to process commission payments and pay Mr. Thompson's living expenses. The account was opened on or about July 10, 1994, less than two weeks after the Court rendered its judgment against Respondents, as shown on attached Exhibit "1". That account is outside of the reach of garnishment on this judgment. Execution upon the personal property of Respondents has been made impractical by Respondents' absence or avoidance of service of process as shown by the U.S. Marshal's affidavit attached hereto as Exhibit "2" and to the Motion for Substituted Service filed in this case.

The exhibits attached to the application, a copy of a bank statement for Mac Consulting, Inc. and an affidavit of a United States Marshal who attempted to serve a writ of execution on Thompson, tend to corroborate the indicated allegations.

The same District Court Judge who presided over the April 3, 1995, hearing also presided over the trial that resulted in the judgment that is the subject of the present proceedings. After that trial, the judge made oral findings that Thompson was an insurance agent and that he was going to receive, because of his ERISA fraud and breach of fiduciary duties, in excess of $118,000 in commissions, plus any bonuses and overrides that might result from the renewal of these premiums. R.Vol.9, pp. 7-8. The trial judge was entitled to take judicial notice in the present case of the evidence that he had heard and the findings that he had made as part of the trial over which he presided. Fed.R.Evid. 201(b). *See MacMillan Bloedel Ltd. v. Flintkote Co.,* 760 F.2d 580, 587 (5th Cir.1985)(citing *In Matter of Missionary Baptist Foundation of America,* 712 F.2d 206, 211 (5th Cir.1983); *State of Florida Board of Trustees of the Internal Improvement Trust Fund v. Charley Toppino and Sons, Inc.,* 514 F.2d 700, 704 (5th Cir.1975)).

Considering the evidence available to the District Court, we cannot say that it abused its discretion in determining that there was a sufficient factual basis to warrant allowing the judgment creditor to invoke supplementary proceedings in this case. *See, e.g., Jacobs,* 874 S.W.2d at 167-68 (Debtor admitted in answer to interrogatory to owning accounts receivable but refused to disclose amounts, sources, or locations); *Childre v. Great Southwest Life Ins. Co.,* 700 S.W.2d 284, 288 (Tex.Ct.App.1985)(Corporate officer testified judgment debtor was the record owner of stock); *Arndt v. Nat'l Supply Co.,* 650 S.W.2d 547, 549 (Tex.Ct.App.1983)(Creditor testified debtor's *1976*

7

financial statement reflected stock and accounts receivable ownership and debtor twice failed to appear for depositions); *cf. Beaumont Bank,* 806 S.W.2d at 226 (Once assets are traced to a holder of property of a judgment debtor, the holder is presumed to possess the entire amount and has the burden to show lack of possession of all or part); *Hennigan v. Hennigan,* 666 S.W.2d 322, 324 (Tex.Ct.App.1984)(Husband's testimony that he did not intend to pay former wife's attorney's fees voluntarily and refusal to attend depositions established that his assets were not readily attachable).

Thompson failed to plead specific facts or produce evidence showing that he is entitled to an exemption of any asset or property. In answer to Santibanez's application for relief, he filed a response in which he "denies any [sic] the existence of non-exempt property designated in paragraph 3, As it relates to item 1 in paragraph 3. Any such commissions would be considered wages in accordance with Tex. Civ. Prac. & Rem.Code 31.0025." Thompson produced no evidence of concrete facts showing that any particular asset fell within an exempt statutory classification. He failed to appear at depositions or to present any evidence at the hearing in this respect. He was represented by counsel at the hearing who presented only oral argument and no sworn testimony.

On appeal, Thompson attempts to argue, without any support of allegations or proof of specific facts in the record, that he is entitled to exemptions for wages and/or commissions under the Texas Property Code and the Texas constitution.ege and prove concrete facts showing that he was receiving current wages for personal services from a particular person with whom he had an employer/employee relationship. *See* Tex. Const. art. XVI, sec. 28; *Brasher v. Carnation Co.,* 92 S.W.2d 573 (Tex.Ct.App.1936); *see also* Tex. Prop.Code Ann. 42.001 (Vernon Supp.1997); *DeVore v. Central Bank & Trust,* 908 S.W.2d 605 (Tex.Ct.App.1995). The record does not contain any such allegation, evidence, or proof.

To be entitled to the commissions exemption, Thompson was required to allege and prove specific facts to show that he was due unpaid commissions of disclosed amounts for described personal services and to demonstrate the aggregate fair market value of his exempt assets and whether he is providing for a family or is a single adult who is not a member of a family. Tex.

8

Prop.Code. Ann. 42.001 (Vernon Supp.1997). Thompson did not allege or prove any of these factors necessary to a determination of entitlement to an exemption of commissions in the District Court. Consequently, Thompson's arguments are wholly without merit.

Moreover, the District Court had the power to appoint a receiver to take possession of the judgment debtor's property for preservation under Federal Rule of Civil Procedure 66. Under that rule, the appointment of a receiver can be sought "by anyone showing an interest in certain property or a relation to the party in control or ownership thereof such as to justify conservation of the property by a court officer." 7 Moore *et al.,* ¶ 66.05[1]. The appointment is in the sound discretion of the court. *Id.* Similarly, "the form and quantum of evidence required on a motion requesting the appointment of a receiver is a matter of judicial discretion." 12 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2983 (1973)(citing authorities). Courts have held that receivers may be appointed "to preserve property pending final determination of its distributio*et al.,* ¶ 66.05[1] (citing *Haase v. Chapman,* 308 F.Supp. 399 (W.D.Mo.1969)). In addition, "receivership may be an appropriate remedy for a judgment creditor who seeks to set aside allegedly fraudulent conveyances by the judgment debtor, or who has had execution issued and returned unsatisfied, or who proceeds through supplementary proceedings pursuant to Rule 69, or who seeks to subject equitable assets to the payment of his judgment, or who otherwise is attempting to have the debtor's property preserved from dissipation until his claim can be satisfied." 12 Wright & Miller, § 2983 (citing *Pusey & Jones Co. v. Hanssen,* 261 U.S. 491, 43 S.Ct. 454, 67 L.Ed. 763 (1923))(footnotes and citations omitted). Factors that courts have considered as indicating the need for a receivership include the following: "a valid claim by the party seeking the appointment; the probability that fraudulent conduct has occurred or will occur to frustrate that claim; imminent danger that property will be concealed, lost, or diminished in value; inadequacy of legal remedies; lack of a less drastic equitable remedy; and likelihood that appointing the receiver will do more good than harm." *Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.,* 999 F.2d 314, 316-17 (8th Cir.1993). In an action "where the appointment of a receiver is sought at the commencement thereof, ... [t]he decision will

be made on the basis of the moving papers and such answers, affidavits in apposition, or counter-affidavits as may be offered, and also on the testimony of witnesses in open court if the court deems such a hearing advisable." 7 Moore *et al.,* ¶ 66.04[1] (citing *Haase v. Chapman, supra; United States v. O'Connor,* 291 F.2d 520 (2d Cir.1961)).

Consequently, we conclude that the District Court did not abuse its discretion in finding that Thompson owned or controlled present or future rights to property and that Thompson failed to carry his burden to allege and prove that he was entitled to specific exemptions for particular assets.

5.

Thompson makes several arguments urging reversal of the civil portion of his contempt order. None of them have reversible merit. On October 23, 1995, prior to the hearing on contempt, the receiver submitted a report to the court documenting Thompson's alleged failure to obey the court's April 7 order. The report, bolstered by twelve exhibits, outlines a list of violations including: failure to turn over property, fraudulent transfers of money, interference with the collection of commissions, inconsistent and incomplete deposition testimony by Thompson, and inadequate compliance with requests for information. The exhibits include: affidavits, deposition transcripts, letters from insurance companies affiliated with Thompson, and deposit slips and canceled checks signed by Thompson. Thompson merely denied the allegations in a written response filed October 30 and offered no supporting evidence. In the hearing held the same day, the receiver appeared and further explained his findings to the court. Thompson did not attempt to call the receiver to the stand or cross-examine him. Thompson did not seek to test the evidence upon which the receiver's report was based. Although Thompson was present, he did not testify. Instead, his attorney merely presented oral argument. The court's order of contempt, entered the next day, adopted the receiver's report and sentenced Thompson to 30 days in jail for past violations and required him to remain there until full compliance occurs.

We note that federal courts are prevented from imprisoning a party for contempt when doing so would conflict with the state's prohibition of debt imprisonment. 28 U.S.C. § 2007(a). *See* Tex.

10

Const. art. I, sec. 18. On analogous facts, a Texas court applying the constitutional provision to the turnover statute held that the defense is unavailable "unless the contemner demonstrates inability to pay." *Ex Parte Buller,* 834 S.W.2d 622, 626 (Tex.Ct.App.1992)(internal quotations omitted); s, 779 F.2d 302 (5th Cir.1986). *Buller* is evidently the latest and most authoritative expression of state law applicable to the facts of the present case. Thompson did not demonstrate his inability to pay.

Relying on Texas cases, Thompson argues that: (1) civil contempt is only available for willful disobedience and that there was no evidence of such; (2) he was deprived of the right to confront witnesses; (3) the contempt order did not spell out how the prior order was violated; and, (4) the turnover order requires Thompson to produce wages which are exempt under Texas law.

Thompson's first assertion has no basis in fact. There was ample evidence of willful disobedience presented with the receiver's report. Thompson was free to call the receiver to the stand and cross-examine him as to the documentary evidence attached to his report. Thompson also could have testified, called witnesses, and presented evidence to explain his failure to comply and to establish his entitlement to exemptions.

By claiming that he was deprived of his right to confront witnesses, Thompson invokes the Confrontation Clause of the Sixth Amendment. However, the protections of the Sixth Amendment extend only to criminal proceedings. *See United States v. Zucker,* 161 U.S. 475, 16 S.Ct. 641, 40 L.Ed. 777 (1896). Thompson contests only the civil portion of the contempt order, and thus we find that Sixth Amendment considerations do not apply.

The 30-day jail sentence, although arguably a criminal contempt for past conduct, is not before us because Thompson did not appeal that portion of the order. On the other hand, the contempt resulting in an indefinite sentence is a "paradigmatic coercive, civil contempt sanction" to which Thompson " "carries t he keys of his prison in his own pocket.' " *United Mine Workers of America v. Bagwell,* 512 U.S. 821, ---- - ----, 114 S.Ct. 2552, 2557-58, 129 L.Ed.2d 642 (1994)(quoting *Gompers v. Buck's Stove & Range Co.,* 221 U.S. 418, 442, 31 S.Ct. 492, 498, 55 L.Ed. 797 (1911)). Although a contempt which occurs outside the court's presence is sometimes

11

granted greater procedural protection, when it "involv[es] discrete, readily ascertainable acts, such as turning over a key or payment of a judgment," civil procedural safeguards are sufficient. *Id.* at ----, 114 S.Ct. at 2560.

Third, although Texas courts have made it clear that a contemner must be told in the judgment "the exact nature of his violation," the purpose of this requirement is to assure that the party "know what steps are required to purge himself so as to be released from jail." *Ex Parte McClain,* 762 S.W.2d 238, 240 (Tex.Ct.App.1988); *see also Ex parte Proctor,* 398 S.W.2d 917 (Tex.1966). The district court's order meets this requirement by providing that Thompson is being held in contempt for avoiding the court's turnover order and that to secure his freedom, he must fully comply with it.

Thompson's claim that the order requires the production of exempt property is misplaced. His bare allegation that the court is requiring him to produce "wages" does not prove entitlement to an exemption and thus does not relieve Thompson of his duty to comply with the turnover order.

Finally, Thompson makes two baseless arguments. He claims that no motion for contempt was filed. This is incorrect. A motion for sanctions was filed in the District Court on June 14, 1995, and it requested that Thompson be held in contempt. He also incorrectly claims that he was never given an opportunity to explain his actions. Thompson filed a written response to the receiver's report in which he denied the allegations without providing any explanation. At the hearing, Thompson, acting on advice of counsel, refused to testify or otherwise respond to any of the findings contained in the receiver's report.

We review the District Court's contempt order for an abuse of discretion. *Martin v. Trinity Indus., Inc.,* 959 F.2d 45, 46 (5th Cir.1992)(citing *United States v. Sorrells,* 877 F.2d 346, 348 (5th Cir.1989)). Given the detailed violations itemized by the receiver's report, the exhibits and documentary evidence attached, and the refusal by Thompson to present evidence or explanation in his defense, we conclude that the District Court did not abuse itnd willfully refusing to comply with the turnover order.

12

Conclusion

For the foregoing reasons, the district court's turnover and contempt orders are AFFIRMED.

BENAVIDES, Circuit Judge, concurring:

While I agree with the majority's disposition of the instant case, I write separately to emphasize the recalcitrant behavior of the appellant and his utter failure, despite multiple opportunities, to provide the district court with any legal or factual support for the claim that his commissions were exempt from the court's turnover order pursuant to state law.

The Texas Property Code explicitly addresses the collection of unpaid commission payments and provides: "Unpaid commissions for personal services not to exceed 25% of the aggregate limitations prescribed by Subsection (a) are exempt from seizure and are included in the aggregate." TEX. PROP. CODE § 42.001(d) (Vernon Supp.1997). Subsection (a), in turn, provides that the personal property exemption has an aggregate limit of $60,000 in fair market value for a family and $30,000 in fair market value for a single adult. *See id.* § 42.001(a). In combination, these provisions make clear that some, but not all, commissions are exempt from seizure pursuant to Texas law. Whether and to what extent a particular commission payment is exempt under the statute turns on the amount of the commission and the familial status of the individual claiming the exemption.

Despite a potentially meritorious legal claim under Texas law, the appellant failed to provide any information in response to the district court's April 11 deadline, arguing instead that the court's turnover order was unenforceable. Similarly, the appellant failed to provide any evidentiary support for his position at the October 30 contempt hearing, relying on his counsel's argument that "[a]ny commissions would be considered wages in accordance with Texas Civil Practice and Remedies Code § 31.0025." Never did the appellant refer the district court to the relevant statutory provision. Nor did he provide any affirmative evidence regarding his familial status or the amounts of the accounts receivable on his commissions. Under thess discretion in concluding that the appellant failed to establish that his commissions were exempt from seizure under Texas law.

13