# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-11270

United States Court of Appeals
Fifth Circuit

**FILED**

April 22, 2019

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

      Plaintiff - Appellee

v.

WILLIAM NICHOLAS RAND,

      Defendant - Appellant

Appeal from the Unites States District Court
for the Northern District of Texas
USDC No. 3:09-CR-120-2

Before CLEMENT, OWEN and HO, Circuit Judges.

PER CURIAM:*

I.

William Nicholas Rand pled guilty to three counts of securities fraud in violation of 15 U.S.C. §§ 77q(a) and 77x. In addition to a 168-month prison sentence, the district court ordered Rand to pay a $300 special assessment and $99,707,758.04 in restitution. According to the written judgment, restitution would be due during Rand's imprisonment. However, at sentencing, the district court orally proclaimed that restitution payments would not commence

---

\* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-11270

until 60 days after Rand's release from prison at the rate of $50 per month, or ten percent of his gross salary, whichever was greater.  Upon a motion by the government, the district court sought to harmonize the two payment schedules.  It ordered the district clerk to issue an amended judgment, formalizing the restitution plan announced by the district court at sentencing.

Since that time, the government has learned that Rand amassed approximately $1,684.57 in his inmate trust account.  The government deemed this to be "substantial resources," as provided by the Mandatory Victims Restitution Act (MVRA).  18 U.S.C. § 3664(n).  It noted that, upon entry of judgment, a lien arose against all of Rand's property and his rights to property.  *See* 18 U.S.C § 3613(c).  It therefore moved for an order directing the Bureau of Prisons (BOP) to turn over the entirety of the trust as payment towards Rand's outstanding balance, which, at the time, stood at more than $96 million.  Three days later and before it received a response from Rand, the district court granted the order without comment.

Rand appealed, *pro se*, contending that the district court erred when it ordered the BOP to turn over the contents of his inmate trust account.  He tendered three claims in support.  First, Rand argues that the district court's oral pronouncement precludes the government from pursuing restitution prior to the end of his prison term.  Second, he argues that the funds in his inmate trust account were exempt from seizure under 26 U.S.C. § 6334(a)(9) and (d).  Third, he argues that by entering the order only three days after the government's motion was filed, the district court denied Rand notice and a meaningful opportunity to respond to the government's motion, thereby violating his due process rights.  We consider each claim in turn.

II.

The district court's decision to issue a turnover order is reviewed for abuse of discretion.  *Santibanez v. Wier McMahon & Co.*, 105 F.3d 234, 239

No. 17-11270

(5th Cir. 1997). It "may be reversed only if the court has acted in an unreasonable or arbitrary manner." *Id.* We previously have held that a district court meets this standard if it bases its ruling on an erroneous view of the law or a clearly erroneous assessment of the evidence. *United States v. Clayton*, 613 F.3d 592, 595 (5th Cir. 2008). However, we have also cautioned that the district court's issuance of a turnover order "will not be reversed for abuse of discretion if the judgment is sustainable for any reason," even if it was predicated on an erroneous conclusion of law. *Santibanez*, 105 F.3d at 239 (citing *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991)). In that, we have adopted the rubric utilized in Texas state law, from where the turnover mechanism originates. *Buller*, 806 S.W.2d at 226.

## A.

To facilitate the recovery of monies owed, Congress, under the MVRA, bestowed the government with the authority to enforce restitution orders in the same manner that it enforces fines as well as by all other available means. 18 U.S.C. § 3664(m)(1)(A)(i)–(ii). The government is further authorized to collect restitution "in accordance with the practices and procedures for the enforcement of a civil judgment under Federal law or State law." 18 U.S.C § 3613(a). This court has recognized Texas's Turnover Statute as one of the apparatuses by which criminal debt may be secured. *United States v. Messervey*, 182 F. App'x 318, 320–21 (5th Cir. 2006) (per curiam). And it has applied the statute to an inmate's trust account on multiple occasions. *See, e.g.*, *United States v. Diehl*, 848 F.3d 629, 635 (5th Cir. 2017); *United States v. Brewer*, 699 F. App'x. 318, 319 (5th Cir. 2017) (per curiam).

Rand contests the appropriateness of the turnover order as applied to his case. He observes that the district court postponed his restitution payments until after his release from custody and asserts that the postponement forecloses the attempt by the government to collect on his debt sooner. The

3

No. 17-11270

government counters that the payment schedule articulated by the court is not a shield against collection; it instead represents one of the many ways that the government may recoup Rand's outstanding obligation.

Of the two arguments, we find the government's to be the most persuasive.

Restitution operates as "a lien in favor of the United States." 18 U.S.C. § 3613(c). The lien spans over all the defendant's non-exempt property and interests in property until the debt is settled or expires as per 18 U.S.C. § 3613(b). Congress specifically clarified that criminal debtors retain their obligation throughout their prison term and must not only inform the court and attorney general of any material change affecting their ability to pay but also "apply the value of [substantial] resources to any restitution or fine still owed," even if the resources were acquired while in custody. 18 U.S.C § 3664(k), (n).

Moreover, fines, restitution, and other monetary penalties are due immediately under 18 U.S.C. § 3572(d)(1). There is an exception for when "in the interest of justice, the court provides for payment on a date certain or in installments." *Id.* But the government wields significant flexibility even then. We have noted elsewhere that the attorney general has a statutory duty to enforce restitution orders and to do so "aggressively." *United States v. Phillips*, 303 F.3d 548, 551 (5th Cir. 2002). So long as the judgment contains nothing to the contrary, the government may pursue immediate payment or an adjustment of the payment schedule, as it did here. *Diehl*, 848 F.3d at 634 (citing *United States v. Ekong*, 518 F.3d 285, 286 (5th Cir. 2007) (per curiam)).

In the instant case, the district court postponed Rand's restitution, but it did not expressly state that it was deferring payments "in the interest of justice." 18 U.S.C. § 3572(d)(1). Nor did the district court specify that the government could not pursue the debt earlier should circumstances change.

4

No. 17-11270

Without that qualification, Rand remained subject to the default presumption that his restitution would be due as he acquired the means to pay it. The government therefore acted within its statutory mandate when it notified the district court that Rand had acquired the ability to pay part of his debt sooner than expected.

What is more, the district court "may, on its own motion, or the motion of any party, including the victim, adjust the payment schedule, or require immediate payment in full, as the interests of justice require." 18 U.S.C § 3664(k). In short, Rand cannot escape his responsibility to restore his victims by hiding behind his sentencing order, not when he has the means to pay and not when the law provides a remedy that the government and the district court may act upon.

### B.

Rand further observes that, under 18 U.S.C. § 3613(c), a restitution order is to be treated as if it "were a liability for a tax assessed under the Internal Revenue Code of 1986." He therefore assumes that the same exemptions apply here as when enumerating a person's tax levy. Operating on this assumption, Rand argues that the funds in his inmate trust account constitute income and should qualify for an exemption pursuant to 26 U.S.C. § 6334(a)(9) and (d).

This is an incorrect statement of the law. As a general matter, the law treats restitution and a tax liability alike, but that rule must give way when confronted by a clear command from Congress. Congress specified the exclusive list of exemptions available to criminal debtors in 18 U.S.C. § 3613(a)(1). By design, it elected to incorporate only some of the categories of property exempt from tax levies into the relevant criminal judgment enforcement provisions: namely, 26 U.S.C. § 6334(a)(1)–(8), (10), (12). The subsections referenced by Rand do not appear among them. *See id.*

No. 17-11270

The Supreme Court instructs, "[w]here Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent." *Hillman v. Maretta*, 569 U.S. 483, 496 (2013) (quotation omitted). We have been given no reason to question what seems to be a purposeful choice by Congress to omit wages, salaries, and other income from the exemptions offered to criminal defendants. We in fact have recognized that by passing the MVRA, Congress intended "to facilitate victim recovery" with vigorous enforcement. *United States v. Lockhart*, 584 F. App'x 268, 270 (5th Cir. 2014) (unpublished). This court therefore has no basis for shielding the wages and deposits that make up Rand's commissary account from a properly submitted turnover order. The funds remain subject to the lien and can be acquired by the government to make Rand's victims whole.

## C.

Rand's final claim pertains to the three-day turnaround time between the government filing its turnover request and the district court granting it. He claims that the rapid response effectively denied him a chance to reply and thus violated his right to due process.

Because we have not yet definitively ruled on the amount of due process owed to an inmate subject to a restitution-based turnover order, the government directs our attention to our sister circuits for guidance. In particular, the government asks that we adopt the Ninth Circuit's reasoning in *United States v Poff*, 727 F. App'x 249 (9th Cir. 2018), *vacated*, No. 18-195, 2019 WL 113040 (Jan. 7, 2019). We decline to do so. The analysis in *Poff* revolved around a pre-deprivation hearing which entailed a sizeable administrative burden and delay. Rand, in contrast, has not pled for anything so grand. He merely wants the reasonable opportunity to submit a written

6

reply so that the district court might at least consider his side before granting the order.

A better lodestar is one of this court's unpublished opinions, *United States v. Reed,* where we decided that a district court did not abuse its discretion in denying the defendant's 18 U.S.C. § 3582(c)(2) motion without first allowing him to respond to the government's opposition motion. 403 F. App'x 965, 967 (5th Cir. 2010) (per curiam). The court in that instance identified the central question as whether the response would have affected the outcome of the district court's decision. We find *Reed's* framing of this issue to be persuasive and adopt it here. *See Ballard v. Burton*, 444 F.3d 391, 401 & n.7 (5th Cir. 2006) (recognizing that an unpublished opinion is not binding but may be persuasive).

As stated above, Rand was subject to an ongoing lien. His inmate trust account did not qualify for any of the listed exemptions, and the government had the authority to claim the funds on behalf of his victims. Taking into account these points, the record at hand, and the briefs submitted by each of the parties, Rand has not sufficiently demonstrated to this court that a response would have affected the outcome of the proceeding.

The order is AFFIRMED.