# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 21, 2026

Lyle W. Cayce
Clerk

_____

No. 25-50587

_____

United States of America,

*Plaintiff—Appellee*,

*versus*

Peter Victor Ayika,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. 3:11-CR-2126-1

_____

Before Stewart, Engelhardt, and Douglas, *Circuit Judges*.

Per Curiam:[*]

Defendant-Appellant Peter Ayika was convicted by a jury of health care fraud and sentenced to imprisonment, supervised release, payment of $2,482,901.93 in restitution, and forfeiture of certain property and bank accounts. After an appeal to our court and subsequent remand to the district court, the Government filed an application for a turnover order of various accounts pursuant to the Texas turnover statute, which the district court

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

granted. Ayika again appealed, arguing that the district court abused its discretion. We VACATE and REMAND.

I

Peter Ayika first pleaded guilty to health care fraud under 18 U.S.C. § 1347 in May 2012. Ayika was sentenced to 63 months of imprisonment, two years of supervised release, payment of $2,498,586.86 in restitution, and the forfeiture of certain property and bank accounts. On appeal in February 2014, because the district court impermissibly participated in the plea negotiations during the status conference, our court vacated his guilty plea and remanded to the district court. *United States v. Ayika*, 554 F. App'x 302 (5th Cir. 2014) (*Ayika I*). On remand, a jury convicted Ayika of the same offense in November 2014; he was sentenced to 87 months of imprisonment, three years of supervised release, payment of $2,482,901.93 in restitution, and forfeiture of certain property and bank accounts on February 5, 2015. After appealing again, Ayika filed a motion in the district court on February 20, 2015, asserting he had a legal interest in the forfeited properties.

On the second appeal in September 2016, our court affirmed in part as to Ayika's conviction, sentence, and restitution, but vacated in part regarding the forfeiture of specific properties, holding that the assets were not traceable to the crime of conviction and therefore not forfeitable under 18 U.S.C. § 982(a)(7). *United States v. Ayika*, 837 F.3d 460, 463–74 (5th Cir. 2016) (*Ayika II*). However, we noted that the Government could alternatively seek forfeiture under the substitute asset provision pursuant to 21 U.S.C. § 853(p). *Id.* at 474. On remand for the second time, the Government filed a motion for a preliminary order of forfeiture of substitute assets excluding the accounts at issue in this appeal (the "Accounts"), which the district court granted in September 2024. Ayika thereafter filed a reply.

No. 25-50587

The Government had stated in a motion on July 1, 2025, that the United States Marshals Service ("USMS") had requested direct deposit information from Ayika to return the Accounts because they were excluded from the preliminary order, and Ayika stated that he disclaimed any interest and that the funds should be sent to his brother, Paul Ayika. The Government, faced with the prospect of the funds in the Accounts being transferred to a third party while Ayika still owed over $2 million in restitution, requested that the Accounts instead be turned over as partial satisfaction of Ayika's outstanding restitution obligation. The Government argued that although the accounts were not forfeitable under 18 U.S.C. § 982(a)(7), a federal-tax-type lien automatically arose, pursuant to 18 U.S.C. § 3613(a), (c), and (f), when restitution was ordered. The Government asked the district court to order the turnover of the accounts pursuant to the Texas turnover statute. *See* Tex. Civ. Prac. & Rem. Code § 31.002(a).

The district court issued the turnover order two days later directing the USMS to turn over $112,366.77, the balance in the Accounts, to the Government. One week later, Ayika filed a motion arguing that because the Accounts were created under the Texas Uniform Transfers to Minors Act ("TUTMA") and he was compliant with the restitution order, turnover would be improper. The district court denied the motion as moot, and Ayika appealed. On appeal, Ayika argues the district court abused its discretion by (1) ordering the turnover of accounts created pursuant to the TUTMA, (2) violating his due process rights, (3) ordering the turnover even though he was current on his payment schedule, and (4) failing to address whether the Government was estopped from relitigating the forfeiture of the TUTMA accounts. We address each in turn.

## II

We have jurisdiction over turnover orders under both 28 U.S.C. § 1291 and the collateral order doctrine. *Hewlett-Packard Co. v. Quanta Storage Inc.*, 961 F.3d 731, 741-42 (5th Cir. 2020) (finding jurisdiction over a turnover order under 28 U.S.C. § 1291); *Maiz v. Virani*, 311 F.3d 334, 339 n.4 (5th Cir. 2002) (stating that our court has jurisdiction over turnover orders under the collateral order doctrine). Our court reviews the issuance of a turnover order for abuse of discretion. *United States v. Rand*, 924 F.3d 140, 142 (5th Cir. 2019). "A trial court abuses its discretion when its ruling is based on an erroneous view of the law or clearly erroneous assessment of the evidence." *United States v. Crawley*, 533 F.3d 349, 358 (5th Cir. 2008). We reverse "only if the court has acted in an unreasonable or arbitrary manner." *Santibanez v. Wier McMahon & Co.*, 105 F.3d 234, 239 (5th Cir. 1997). However, we have also adopted the Texas law framework in that the issuance of a turnover order will not be reversed under the abuse of direction standard "if the judgment [was] sustainable for any reason, even if it was predicated on an erroneous conclusion of law." *Rand*, 924 F.3d at 142 (quoting *Santibanez*, 105 F.3d at 239) (citation modified).

## A

Ayika argues that the Accounts were established under the TUTMA on behalf of his children and they therefore cannot be used to satisfy his restitution obligation. Under 28 U.S.C. § 3001(a), the Government may use civil procedures to recover a judgment on a debt, which includes amounts owed for restitution. 28 U.S.C. § 3002(3)(B). The Government may use the practices and procedures under federal or state law to enforce a civil judgment imposing a fine. 18 U.S.C. § 3613(a), (f). An order of restitution made pursuant to statutory provisions, including 18 U.S.C. § 3663A, the Mandatory Victim Restitution Act ("MVRA"), which governs Ayika's

offense, is a lien in favor of the Government on "all property and rights to property of the person [ordered to pay restitution] as if the liability of the person fined were a liability for a tax assessed under the Internal Revenue Code of 1986." 18 U.S.C. § 3613(c).

Our court has approved the Government's use of the Texas turnover statute to enforce a criminal restitution order. *See United States v. Diehl*, 848 F.3d 629, 632–33 (5th Cir. 2017) (citing *United States v. Messervey*, 182 F. App'x 318, 321 (5th Cir. 2006)). Texas law provides for turnover orders "if the judgment debtor owns property, including present or future rights to property, that is not exempt from attachment, execution, or seizure for the satisfaction of liabilities." Tex. Civ. Prac. & Rem. Code § 31.002(a). Under Texas law, a debtor has the burden to "allege known tangible facts necessary to show that a particular asset falls within a statutorily exempt classification." *Santibanez*, 105 F.3d at 239.

Ayika contends that he established the TUTMA accounts on behalf of his then minor children and that under Texas law, the funds are the property of his children and are irrevocable assets. Ayika points to no jurisprudential authority demonstrating that accounts created for minor children under the TUTMA are not a judgment debtor's property or "present or future rights to property" or are "exempt from attachment" under the Texas turnover statute, *id.*, and relies entirely on the TUTMA statutory text which states that transfers made under the act are "irrevocable" and "the custodial property is indefeasibly vested in the minor." Tex. Prop. Code § 141.012.[1]

---

[1] The only court to address this issue is a district court in *United States v. Bluewave Healthcare Consultants, Inc.* 2021 WL 5043086 (D.S.C. Oct. 29, 2021). There, the court considered an account created under South Carolina's UTMA, and whether the Government court recover funds under the Federal Debt Collection Procedures Act

No. 25-50587

Assuming *arguendo* that TUTMA accounts by law are not Ayika's property or would be exempt from federal restitution obligations, the deferential standard of review defeats Ayika's claims here. Under Texas law, even if a turnover order was predicated on an erroneous conclusion of law, our court will not reverse under the abuse of discretion standard "if the judgment was sustainable for any reason." *Rand*, 924 F.3d at 142. Assuming Ayika's legal argument that the TUTMA accounts are not the property of the custodian is correct, Ayika nevertheless has taken numerous actions inconsistent with the role of a mere custodian of TUTMA accounts, and more consistent with that of a property owner. Ayika originally agreed that the funds could be forfeited in his plea agreement before it was vacated on appeal in *Ayika I*; he filed a motion asserting he had legal ownership in properties that were preliminarily forfeited on February 2, 2015, which included the Accounts; and the Government stated that when the USMS requested Ayika's direct deposit information to return the funds in the Accounts, he disclaimed any interest and directed they be sent to his brother, rather than his now adult children.[2]

Furthermore, Ayika described the funds in the Accounts as his own "products of gainful employment", and in 2013, Ayika's late wife Ujunwa Ayika, individually and on behalf of the children, originally agreed to waive claims to the Accounts in a settlement agreement with the Government in

---

("FDCPA"). *Id.* at 2. The court determined that because the defendant withdrew money from the accounts and failed to deliver control of the accounts to his children when they turned 21 years old, he therefore could not invoke the benefits under the Act. *Id.* at 6.

[2] For the first time on appeal, Ayika claims in his reply brief that the Government is referencing the USMS Basic-Vendor Form that his brother completed on his behalf because he does not have a bank account after his funds were seized. Ayika nevertheless offers no explanation on appeal nor in his motion before the district court explaining why he did not request the funds be sent to his now adult children.

No. 25-50587

2013 in exchange for the Government's agreement not to pursue forfeiture of their home.[3]  Under the deferential standard of review and the current record,  the judgment would otherwise be sustainable under the aforementioned circumstances.  *Rand*, 924 F.3d at 142.  We therefore decline to reverse on this issue.

We next consider Ayika's argument that the district court violated his due process rights in granting the Government's motion for the turnover order without providing him notice and an opportunity to respond.  In *Rand*, our court reviewed a turnover order issued by a district court three days after the Government's motion.  924 F.3d at 142.  In that case, we relied on our previous decision in *Reed*, holding that the central question is "whether the response would have affected the outcome of the district court's decision. *Id.* at 144–45 (citing *United States v. Reed*, 403 F. App'x 965 (5th Cir. 2010)).

Ayika was subject to an ongoing lien against his property to satisfy his restitution, and the Government had the authority to claim funds on behalf of his victims.  *Id.*  Ayika's response motion at the district court argued that the funds were held in children's names and irrevocable under the TUTMA and he was current on his payment schedule.  In this case, it is unknown whether the now adult children would have filed claims to the Accounts if given the opportunity.  We therefore vacate on this issue and remand for the district court to notify Ayika's children.

B

Ayika's remaining arguments lack merit.  First, Ayika argues that the Government essentially sought the re-forfeiture of the returned Accounts and that the Government is estopped from relitigating the funds we decided

---

[3] Ujunwa Ayika passed on February 5, 2015.

7

were not forfeitable in *Ayika II*. Our review of this issue is limited to plain error because Ayika did not raise this issue before the district court. *See Puckett v. United States*, 556 U.S. 129, 135 (2009). Plain-error review requires an error or defect that is clear or obvious and that affects the appellant's substantial rights; if the foregoing is true, our court then has the discretion to remedy the error only if it "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (citation modified). The law of the case doctrine provides that a district court on remand or an appellate court on a subsequent appeal may not reexamine "an issue of fact or law" that was already decided in a prior appeal. *Demahy v. Schwarz Pharma, Inc.*, 702 F.3d 177, 184 (5th Cir. 2012) (citation omitted).

In *Ayika II*, we determined that the property was not forfeitable because it was not traceable to Ayika's crime of conviction. *Ayika*, 837 F.3d at 468–77. The forfeitability of Ayika's assets involved in his offense is a separate and distinct issue from Ayika's restitution obligation, which is governed by the MVRA. 18 U.S.C. § 3663A. Accordingly, Ayika's obligation to pay restitution is not an "issue of fact or law" that we decided in *Ayika II* that would bar the Government from seeking the turnover of the Accounts on remand. *Demahy*, 702 F.3d at 184 (5th Cir. 2012). We therefore find that the district court did not err in allowing the Government to seek the turnover of the Accounts to satisfy Ayika's restitution obligation.

Lastly, relying on *United States v. Hughes*, Ayika argues that he was compliant with his monthly payment schedule, and the district court therefore erred in determining the Accounts were subject to the turnover order. 914 F.3d 947 (5th Cir. 2019). In response, the Government directs this court to the February 6, 2015 judgment of conviction, which provided that restitution was due immediately and did not establish a payment schedule, which distinguishes the sole precedent Ayika relies on in his argument. In *Hughes*, our court determined that because the defendant had not defaulted

on his restitution installment payments, a turnover order of the balance in an inmate's full trust account was not proper. *Id.* at 949–52. *Hughes* is inapplicable here where the judgment did not impose a payment schedule and the district court did not abuse its discretion in ordering the turnover of the balance in the Accounts. *See also Diehl*, 848 F.3d at 633–35 (holding that participation in the Bureau of Prison's inmate financial responsibility program and adherence to a payment schedule did not change the fact that the Government may collect restitution immediately where the judgment does not specify a payment schedule). Therefore, the Accounts may still be subject to turnover pending further proceedings.

We accordingly VACATE and REMAND for the district court to notify Ayika's children of the Government's motion for a turnover order and establish the appropriate deadlines for the filing of the claims and responses.