NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted January 18, 2017[*]
Decided January 18, 2017

**Before**

WILLIAM J. BAUER, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 16-3020

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Eastern District of Wisconsin. |
| *v.* | No. 12-CR-37 |
| MATHEW L. LEMBERGER, *Defendant-Appellant.* | William C. Griesbach, *Chief Judge.* |

## O R D E R

Mathew Lemberger appeals the district court's order granting the government's request to seize his funds to pay his criminal restitution obligations. Because ample authority justifies the court's order to seize these assets, we affirm.

Lemberger pleaded guilty in 2013 to two counts of federal arson, *see* 18 U.S.C. § 844(i), after he burned down his home and business to collect insurance money. The district court sentenced him to 120 months' imprisonment (later decreased to 96 months

---

[*] We have unanimously agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. *See* FED. R. APP. P. 34(a)(2)(C).

because of Lemberger's cooperation with the government) and ordered him to pay $779,408 in restitution. The written judgment provides that payment is "to begin immediately" and, beginning 30 days after his release from prison, any unpaid obligation is to be made in monthly installments of at least $50 or 10% of Lemberger's net earnings. After Lemberger began serving his prison term, he started to pay restitution through the Bureau of Prisons's Inmate Financial Responsibility Program.

Three years later, in 2016, the government moved to obtain funds that had been recently deposited in Lemberger's inmate trust account, totaling $4,650, to apply toward his restitution. Lemberger opposed the motion, arguing that the judgment provided for payments only upon his release and not while he was in prison. And, because he was already participating in the Bureau's payment program, he said that the government was not entitled to take any additional funds.

The district court granted the government's motion, explaining that federal law gave the government a lien on Lemberger's account and obliged him to apply any "substantial resources" to the restitution that he owed. *See* 18 U.S.C. §§ 3613(c), 3664(k), 3664(n). Lemberger filed an unsolicited surreply that was docketed two days after the court's decision; in it, he argued mainly that the judgment did not provide for payment of restitution during his incarceration. He later moved for reconsideration, complaining that the court did not consider his surreply and reiterating that he owed no restitution currently. The district court denied the motion for reconsideration, stating that it had considered Lemberger's surreply as well as his motion for reconsideration, but it "remain[ed] convinced" that the government's request to put the $4,650 toward restitution was proper.

In this court Lemberger first raises a baseless procedural argument. He contends that the district court violated "due process" by not considering his surreply or holding a live hearing before rendering its decision. But the district court *did* consider the surreply, and we have too. As to his desire for a live hearing, Lemberger lists six items that he would have presented, but Lemberger does not explain *why* he needed a hearing to present this evidence. For example, he says that he would have shown that most of the money seized had been in his savings account and accumulated over time and he had received the rest of it from an employer. But none of his contentions required a live hearing—he could have submitted records and affidavits to support those arguments.

Lemberger next argues that the written judgment unambiguously states that he is not required to pay restitution during his incarceration. He interprets the judgment's

requirement that "payment [is] to begin immediately" as different from a requirement that the balance is *due in full* immediately. Moreover, Lemberger continues, he owes nothing while in prison because he has no "net earnings" and the court did not set a payment schedule governing his incarceration.

This argument is meritless. The requirement that his payment was "to begin immediately" meant that Lemberger had to pay what restitution he could at the time of the judgment, even if the court did not set a payment schedule. "The federal criminal code *requires* that restitution be paid immediately unless the district court provides otherwise, 18 U.S.C. § 3572(d)(1), which it did not." *United States v. Wykoff*, 839 F.3d 581, 582 (7th Cir. 2016). Likewise in *United States v. Sawyer*, 521 F.3d 792, 795 (7th Cir. 2008), we pointed out that during incarceration "any existing assets should be seized promptly" to satisfy criminal monetary obligations.

Lemberger replies that, because he was already participating in the Bureau's Inmate Financial Responsibility Program to pay his restitution, the government could not take the money from his inmate account. But the program and the government's ability to collect restitution are not mutually exclusive. A restitution order "may be enforced by the United States in the manner provided for" in 18 U.S.C. §§ 3571–3574 and §§ 3611–3615 *or* "by all other available and reasonable means." 18 U.S.C. § 3664(m)(1)(A).

Among the means available to the government, through the Bureau of Prisons, is the Bureau's inmate payment program. *See* 18 U.S.C. § 4042(a)(1); *In re Buddhi*, 658 F.3d 740, 742 (7th Cir. 2011). This program is voluntary and typically handles small, routine payments (the minimum payment is set at $25 a quarter, which is what Lemberger says he was paying). *See* 28 C.F.R. §§ 545.10, 545.11(b)(1).

But regardless of an inmate's participation in the program, the government remains free to use "all other available and reasonable means" in collecting restitution. 18 U.S.C. § 3664(m)(1)(A)(ii). And Lemberger, as "a person obligated to pay restitution" who had a "substantial" sum in his inmate trust account was "required to apply the value of such resources to any restitution." 18 U.S.C. § 3664(n). Thus, the government's request for the court to order the Bureau to turn over the funds in his trust account was lawful.

AFFIRMED.