# United States Court of Appeals
## For the Eighth Circuit

_____

No. 20-2616
_____

United States of America

*Plaintiff - Appellee*

v.

Corey Kidd

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Western District of Arkansas - Hot Springs
_____

Submitted: October 18, 2021
Filed: January 10, 2022
_____

Before SMITH, Chief Judge, WOLLMAN and LOKEN, Circuit Judges.
_____

LOKEN, Circuit Judge.

Federal inmate Corey Kidd appeals a district court order granting the government's Motion for Order to Authorize Payment from Inmate Trust Account, and directing the Bureau of Prisons (BOP) to turn over $5,500 from Kidd's inmate trust account for payment toward his outstanding restitution obligation. The primary issue on appeal is whether the requirement that an inmate who "receives substantial resources from any source, including inheritance, settlement, or other judgment . . .

apply the value of such resources to any restitution . . . still owed," 18 U.S.C. § 3664(n), applies to accumulated prison wages in the trust account of an inmate participating in the BOP's Inmate Financial Responsibility Program.

Without discussing contrary decisions of two sister circuits, the district court accepted the government's argument -- based primarily on the broad purpose of the Mandatory Victim Restitution Act (MVRA) -- that the "clear language" of § 3664(n) applies to any resources received from any source during incarceration. It is a general principle of statutory interpretation that "the meaning of a word cannot be determined in isolation, but must be drawn from the context in which it is used." Deal v. United States, 508 U.S. 129, 132 (1993). Here, the statutory context is far more complex than the government asserts. We conclude § 3664(n) does not apply to accumulated prison wages. As the various sources of the $5,500 in Kidd's inmate trust account are unknown, we vacate the district court's order and remand for further proceedings.

## I.

The district court sentenced Kidd to 155 months in prison after he pleaded guilty to armed robbery of a controlled substance, a crime of violence that required the sentencing court to order restitution to crime victims under the MVRA. See 18 U.S.C. § 3663A(a)(1), (c)(1)(a)(i). The court directed Kidd to pay $61,952.61 in restitution to the pharmacy he robbed and its insurer. The Judgment provided that a lump-sum payment was "due immediately," and if not paid immediately:

> any unpaid financial penalty imposed shall be paid during the period of incarceration at a rate of not less than $25.00 quarterly, or 10% of the defendant's quarterly earnings, whichever is greater. After incarceration, any unpaid financial penalty shall become a special condition of supervised release and may be paid in monthly installments of not less than 10% of the defendant's net monthly household income or $100 per month, whichever is greater.

-2-

When he began incarceration, Kidd agreed to participate in the BOP's Financial Responsibility Program, designed to encourage inmates with a financial obligation such as restitution that cannot be paid at the time of commitment "to earn compensation through UNICOR or other institution work assignments" to satisfy that obligation. BOP Program Statement P5380.08, § 8 (Aug. 15, 2005); see 28 C.F.R. § 545.10-11. Consistent with the above-quoted Judgment, Kidd agreed to pay $25.00 quarterly from his inmate trust fund during incarceration. The record reflects that, as of June 2020, he had made all quarterly payments for seven years, reducing his unpaid restitution by $1,096.45, leaving a balance of $60,856.16 outstanding.

At some point in 2020, the government learned that Kidd had accumulated $5,989.37 in his inmate trust account.[1] The United States Attorney filed a motion for an order authorizing the Bureau of Prisons to pay $5,500 from that account to be applied to Kidd's restitution obligation, leaving $489.37 "prior to withdrawals and other transactions by the inmate." In support, the government relied on two provisions of 18 U.S.C. § 3664, which sets forth procedures governing the issuance and enforcement of all orders of restitution under Title 18, including the MVRA. Section 3664(k) authorizes the sentencing court to "adjust the [restitution] payment schedule, or require immediate payment in full," based upon "any material change in the defendant's economic circumstances that might affect the defendant's ability to

_____

[1]By statute, federal trust funds include "Funds of Federal prisoners" and "Commissary funds, Federal prisons." 31 U.S.C. § 1321(a)(21), (22). The purpose of "the funds of federal prisoners," or "Inmate Deposit Fund," is to maintain inmates' monies while they are incarcerated. The purpose of the "Commissary Fund," generally referred to as the "Trust Fund," is to provide inmates the privilege of obtaining merchandise and services either not provided by the BOP or of a different quality than that provided. See BOP Program Statement 4500.12, Trust Fund/Deposit Fund Manual, § 2.1(a) (Mar. 14, 2018). Withdrawals from an inmate account are subject to detailed procedures. Of relevance here, "Federal Court Orders requiring disbursement of funds from an inmate account must be followed. The court order serves as the source document for the withdrawal." Id. § 10.5(z).

pay restitution." Section 3664(n) requires a defendant who "receives substantial resources from any source, including inheritance, settlement, or other judgment, during a period of incarceration" to "apply the value of such resources to any restitution . . . still owed."[2]

Kidd filed a *pro se* Response opposing the government's motion. As relevant here, the Response stated:

> For the past eight years, I have [been] a willing participant along with the [BOP] in a binding contract [in which] I agreed to pay the twenty-five dollar quarterly restitution and the FBOP agreed to not subject me to any additional payments, sanctions or punishments.
>
> . . . . I have never missed a payment nor have I [been] untruthful about my financial situation. I am an indigent inmate, who happens to work in the prison for eighteen dollars a month. Every so often I may receive outside funds from some one as a result of payment for hand washing clothes, cleaning cells or acting as a personal microwave cook. Outside of that, for the most part I have no financial support . . . . I have been

---

[2]A restitution order gives rise to a lien in favor of the United States that may be enforced against a criminal defendant's property, typically by civil garnishment under the Federal Debt Collection Procedures Act, as if it were a tax liability assessed under the Internal Revenue Code. See 18 U.S.C. § 3613(c). The BOP Trust Fund/Deposit Fund Manual provides that funds in an inmate's Deposit Fund are subject to tax lien and levy pursuant to an IRS order. BOP Program Statement 4500.12, supra, § 10.5(n). However, the government did not proceed in this manner here, perhaps because it knew that a claim for garnishment or a lien turnover order would be subject to Consumer Credit Protection Act limitations on the garnishment of "earnings." See 18 U.S.C. § 3613(a)(3); 15 U.S.C. §§ 1672, 1673(b)(2); see generally United States v. Ashcraft, 732 F.3d 860, 862-65 (8th Cir. 2013); United States v. McClanahan, 2006 WL 1455698, at *3 (S.D. W. Va. 2006). In any event, we consider only the restitution enforcement procedures the government invoked, § 3664(n) and § 3664(k).

forced to save money because upon my release from prison, I will have nothing. No home no clothes, no shoes, no car, no food nothing. . . .

[A]t sentencing the judge stated that I am to pay 25 dollars quarterly . . . and my contract with the FBOP is a reflection of that order . . . . It took me eight years to save almost six thousand dollars. . . . These funds were placed into a special pre-release account, which I cannot access until I am released. The Government states that these funds have been placed in my account over several months by different outside sources. This is absolutely not true, I have saved this money over the past eight years . . . and they are the only resources that I have to give myself a fighting chance upon being released from prison.

. . . I would like to have . . . a hearing in which I can properly produce and present the means in which I received and saved money. How long it took to do so, and also copies of my payments which I made to the FBOP as a result of this restitution at hand.

. . . I am willing to renegotiate my contract with the FBOP and instead of paying $25 quarterly or 10%, I will pay 20% of any funds I have.

Kidd attached to the Response a copy of a BOP document entitled Inmate Financial Responsibility Display that is consistent with his description of his "contract" with the BOP to make quarterly restitution payments consistent with the incarceration payment schedule in the Judgment. The government's Reply did not challenge the facts stated in Kidd's Response. Rather, the government asserted that the $5,500 in Kidd's inmate trust fund "qualify as a material change in his economic circumstances under § 3664(k) [and] also qualifies as receipt of a substantial resource during incarceration within § 3664(n)."

Without holding the hearing Kidd requested, the district court granted the government's motion, relying solely on § 3664(n). The court concluded that under this statute, "any resources received from any source during the Defendant's term of

incarceration must be applied to Defendant's outstanding restitution obligation." On appeal, Kidd urges us to adopt the Fifth Circuit's contrary interpretation of § 3664(n):

> We do not think the gradual accumulation of prison wages constitutes "substantial resources" such that it fits within § 3664(n)'s ambit; rather we think this provision refers to windfalls or sudden financial injections.

United States v. Hughes, 914 F.3d 947, 951 (5th Cir. 2019). In United States v. Poff, the Ninth Circuit agreed that § 3664(n) "refers to windfalls or sudden financial injections that become suddenly available" and therefore "accumulated prison wages . . . do not qualify." 781 F. App'x 593, 594-95 (9th Cir. 2019) (cleaned up). The government argues that this interpretation ignores the term "any source" in the text of § 3664(n).

We review the district court's interpretation of the statute *de novo* and its decision to authorize a payment under § 3664(n) for abuse of discretion. See United States v. Adejumo, 848 F.3d 868, 870 (8th Cir. 2017) (interpreting § 3664 de novo); United States v. Raifsnider, 846 F. App'x 423, 423-24 (8th Cir. 2021) (reviewing § 3664(n) order for abuse of discretion, citing United States v. Rand, 924 F.3d 140, 142 (5th Cir. 2019)). Applying these standards of review, we vacate the district court's Order and remand for further proceedings.

## II.

Section 3664(n) provides that an inmate who "receives substantial resources from any source, including inheritance, settlement, or other judgment" must apply "the value of such resources" to his unpaid restitution. 18 U.S.C. § 3664(n). In interpreting this statute, we begin, as always, with its text. "When the words of a statute are unambiguous . . . judicial inquiry is complete." Conn. Nat. Bank v.

Germain, 503 U.S. 249, 254 (1992) (cleaned up).  Starting with this focus, the government's position -- "any source" means any source -- is strong.  "Read naturally, the word 'any' has an expansive meaning, that is, one or some indiscriminately of whatever kind."  United States v. Gonzales, 520 U.S. 1, 5 (1997) (cleaned up).  However, in deciding whether "any source" in § 3664(n) includes prison wages, "[t]he word 'any' considered alone cannot answer this question. . . . [E]ven though the word 'any' demands a broad interpretation, we must look beyond that word itself."  Small v. United States, 544 U.S. 385, 388 (2005) (cleaned up) (concluding that the term "any court" in 18 U.S.C. § 922(g)(1) "encompasses only domestic, not foreign, convictions," id. at 387).  We must consider the words of § 3664(n) in their statutory context.  See United States v. Williams 553 U.S. 285, 294 (2008) (the "precise context" of a phrase can be determined by "the neighboring words with which it is associated").

In concluding that § 3664(n) does not apply to accumulated prison wages, the Fifth Circuit interpreted the statute as limited to "windfalls or sudden financial injections," focusing on its explicit reference to "inheritance, settlement, or other judgment."  Hughes, 914 F.3d at 951.  In agreeing, the Ninth Circuit invoked the *noscitur a sociis* canon of statutory construction -- a word is known by its associates.  Poff, 781 F. App. at 594-95; see generally Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 195-98 (2012).

"The maxim noscitur a sociis . . . while not an inescapable rule, is often wisely applied where a word is capable of many meanings in order to avoid the giving of unintended breadth to the Acts of Congress."  Jarecki v. G.D. Searle & Co., 367 U.S. 303, 307 (1961); see Maracich v. Spears, 570 U.S. 48, 62-63 (2013).  The difficulty here is that the words at issue, "any source," are a general term that is stated to "include" more specific associates, "inheritance, settlement, or other judgment."  When the specific words in a list are *followed* by a general term, such as "and all other persons," courts generally apply the *ejusdem generis* canon -- "where general

words follow an enumeration of two or more things, they apply only to persons or things of the same general kind or class specifically mentioned." Scalia & Garner at 199. But where the general words precede the specifics, as here, only the more general *noscitur a sociis* canon applies. And where the specifics are preceded by the word "including," or "including without limitation," as in § 3664(n), "[f]ollowing the general term with specifics can serve the function of making doubly sure that the broad (and intended-to-be-broad) general term is taken to include the specifics." Id. at 204. We conclude that is the more logical interpretation of § 3664(n). Thus, we cannot agree with the Fifth and Ninth Circuits that § 3664(n) refers *only* to "windfalls or sudden financial injections." But that does not answer the question whether, given the statute's context, it applies to accumulations of prison wages.

To answer that question, the first thing we note is that § 3664(n) applies to an inmate's receipt of substantial resources, the value of which must be applied to his unpaid restitution. The inference from that wording is that Congress focused on single transactions from outside sources, not the $18 per month paid by the government into Kidd's inmate trust account for his prison wages. Nor do we see any hint in this language that the statute was intended to apply, counterintuitively, to payments made to an inmate during incarceration *by the institution that was incarcerating him*. More important, in our view, court orders withdrawing prison wage payments made into inmates' Commissary and Inmate Deposit accounts at the behest of prosecutors could significantly threaten prison security and administration by hurting inmate morale, discouraging inmates from gaining the benefits of prison work, and interfering with the BOP's carefully constructed Inmate Financial Responsibility Program that includes provisions for paying restitution obligations while incarcerated. See 28 C.F.R. § 545.11.

For these reasons, we agree with the Fifth and Ninth Circuits that § 3664(n) does not apply to prison wages. The government contends that this reading of § 3664(n) is contrary to the MVRA's purpose of collecting "full restitution for crime

victims." But as a unanimous Supreme Court reminded us in rejecting the government's interpretation of another MVRA provision:

> [A] broad general purpose of this kind does not always require us to interpret a restitution statute in a way that favors an award. After all, Congress has enacted many different restitution statutes with differing language, governing different circumstances.

Lagos v. United States, 138 S. Ct. 1684, 1689 (2018).[3]

## III.

As we have explained, the record on appeal does not reveal the sources of the accumulated funds in Kidd's inmate trust account because the district court did not hold the hearing he requested. Section 3664(k) provides that, upon notification "of any material change in the defendant's economic circumstances that might affect the defendant's ability to pay restitution," the district court "may . . . adjust the payment schedule, or require immediate payment in full, as the interests of justice require." 18 U.S.C. § 3664(k). In Hughes, the Fifth Circuit recognized that even a "gradual accumulation of prison wages" could in some circumstances constitute a "material change in the defendant's economic circumstances," 914 F.3d at 951, as Kidd appears to have acknowledged in his Response. We agree.

In addition, the $5,500 at issue could include the receipt of "substantial resources" from outside sources that would be subject to § 3664(n). See United

---

[3]Thus, we need not address the additional question whether the accumulation of $5,500 in Kidd's inmate trust account was the receipt of "substantial resources" within the meaning of § 3664(n), a question the district court did not address. The government argues the word substantial should be viewed "in much the same way as the dictionary defines that term -- i.e., of considerable importance, size, or worth." But that of course ignores the $64 question -- compared to what?

States v. Lemberger, 673 F. App'x 579, 580 (7th Cir. 2017). Or, perhaps more likely, the $5,500 may be an accumulation of small amounts received from various sources that together amount to a "material change" in Kidd's economic circumstances that warrants exercise of the district court's discretion to "adjust the payment schedule" in his Judgment or as established by his IFRP account "as the interests of justice require." See generally United States v. Vanhorn, 399 F.3d 884, 886 (8th Cir. 2005). We remand to the district court for a determination of these additional issues.

The Order of the district court dated July 22, 2020, is vacated, and the case is remanded for further proceedings consistent with this opinion.

_____