# United States Court of Appeals
## For the Eighth Circuit

_____

No. 21-3114
_____

United States of America

*Plaintiff - Appellee*

v.

Robert Carey Evans

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of North Dakota - Eastern

_____

Submitted: April 15, 2022
Filed: September 9, 2022

_____

Before LOKEN, KELLY, and KOBES, Circuit Judges.

_____

LOKEN, Circuit Judge.

In 2013, a jury convicted Robert Carey Evans of possessing materials containing child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B), (b)(2). The district court sentenced him to 120 months imprisonment. The Violence Against Women Act of 1994 also required the court to order restitution to the victims of Evans's child pornography offense. See 18 U.S.C. § 2259(a), (b)(4). Only the victim in the "Vicky" child pornography series requested restitution. After a hearing,

applying the Supreme Court's recent decision in <u>Paroline v. United States</u>, 572 U.S. 434 (2014), the district court found that Vicky suffered $1,346,158.12 in total actual losses from the trafficking of her images, as the parties had stipulated, and ordered Evans to pay a proportionate share of $3,250 in restitution. Evans appealed, arguing the court abused its discretion under <u>Paroline</u> in determining the appropriate amount of restitution. We affirmed. <u>United States v. Evans</u>, 802 F.3d 942 (8th Cir. 2015).

In May 2021, the government moved for an order directing the Bureau of Prisons (BOP) to turn over $2,084 from Evans's inmate trust account to pay the remaining balance of his restitution obligation. The balance in the trust account was then $2,102.92. In a *pro se* response captioned Motion for Summary Judgment and Dismissal of Claims, Evans submitted a BOP document summarizing activity in his inmate trust account and stated: on "April 28, 2021, [he] receive[d] his final CARES Act stimulus payment into his Bureau of Prisons Trust Fund Account," bringing the total amount of funds in the account to "just over $2,260"; $2,102.92 was withdrawn on May 19 for a "Pending Federal Court Order." Evans argued that stimulus funds are "not subject to garnishment" and "must be returned to the Defendant." In addition, he questioned whether Vicky has been fully compensated for her total loss, which would satisfy his restitution obligation. He requested "an Order that the Government obtain a full accounting of all payments made to this victim," appointment of counsel, and a hearing to resolve these issues.[1]

In a three-page order, the district court summarily denied Evans's motion requesting a hearing and granted the government's turnover motion. The court concluded that funds in an inmate's trust account are not exempt from the payment of restitution under 18 U.S.C. § 3613(a)(1), and that 18 U.S.C. § 3664(n), part of the Mandatory Victims Restitution Act (MVRA), "requires that resources received by

[1]Additional arguments collaterally attacking the amount of restitution initially determined by the district court are foreclosed by our decision on direct appeal.

[Evans] from *any source* during his term of incarceration" be applied to his restitution obligation (emphasis in original).[2] The court did not identify the sources of the funds in Evans's trust account or determine whether the funds were "substantial resources" within the meaning of § 3664(n). Evans appeals, raising all these issues.[3] The district court stayed the collection or payment of restitution pending the appeal.

## I.

Evans first argues the district court erred in ordering the turnover of $2,084 without first determining the source of the funds in his trust account and determining whether they were "substantial resources." We agree. With the appeal pending, we issued our decision in United States v. Kidd, addressing whether § 3664(n) "applies to accumulated prison wages in the trust account of an inmate." 23 F.4th 781, 783 (8th Cir. 2022). Like two sister circuits, we rejected the government's view that "any source" unambiguously means any source. Id. at 786. We disagreed with Fifth and Ninth Circuit decisions that § 3664(n) applies *only* to windfalls or sudden financial injections. Id. at 786-87. However, after "consider[ing] the words of § 3664(n) in their statutory context," we agreed "that § 3664(n) does not apply to prison wages." Id. We reversed the turnover order at issue and remanded because "the record on appeal does not reveal the sources of the accumulated funds in Kidd's inmate trust

---

[2]The MVRA governs restitution orders under the Violence Against Women Act. 18 U.S.C. § 2259(b)(3). Section 3664(n) provides that a person who "receives substantial resources from any source, including inheritance, settlement, or other judgment, during a period of incarceration . . . shall be required to apply the value of such resources to any restitution . . . still owed."

[3]The government's contention that we should apply plain-error review because Evans "argues for the first time on appeal that the source of the funds in his inmate trust account are unknown" is without merit. Evans's wide ranging response in opposition to the turnover motion preserved this issue. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

account," which precluded a determination of whether the account included either "substantial resources from outside sources that would be subject to § 3664(n)," or a gradual accumulation of "small amounts received from various sources," including prison wages, that would constitute a "material change in the defendant's economic circumstances" under § 3664(k). Id. at 787-88 (cleaned up).

We review the district court's decision to order a restitution payment under § 3664(n) for abuse of discretion and its interpretation of the statute *de novo*. Kidd, 23 F.4th at 785. Although this appeal involves a COVID-19 stimulus payment rather than an inmate's prison wages, we conclude the court's payment order must be vacated and remanded in light of Kidd.

First, in applying § 3664(n), "[t]he district court must first determine the source of the funds." United States v. Woodring, 35 F.4th 633, 635 (8th Cir. 2022). Here, the district court made no findings as to the source of the funds seized from Evans's trust account. The government argues that Evans in his response to the turnover motion admitted all of the funds came from stimulus payments. Not so. Evans acknowledged that his trust account had received stimulus payments, and he submitted an account transaction record showing a $1,400 deposit on April 28, consistent with the stimulus payment authorized in the American Rescue Plan Act of 2021. See 26 U.S.C. § 6428B. But this does not account for the full balance of the funds seized. The account document has no information on prior transactions, and it shows that Evans received smaller deposits from unidentified sources after April 28. Some of the other funds may have been from excludable sources such as prison wages. Without an adequate record as to timing and source of funds, we cannot determine whether the funds seized from Evans's trust account were "substantial resources from outside sources that would be subject to § 3664(n)." Woodring, 35 F.4th at 635 (citation omitted). In Woodring, we vacated and remanded a turnover order based solely on the government's allegation that the inmate's trust account

-4-

included "a COVID-19 stimulus payment." Id.; see United States v. Robinson, No. 21-2929, 2022 WL 3222042, at *2-3 (8th Cir. Aug. 10, 2022) (same).

Second, after establishing the source of the funds, the court must determine "if applying the funds to restitution is proper." Woodring, 35 F.4th at 635. Without question, CARES Act stimulus payments are from an outside source. They are "advance [tax] refunds and credits" payable to "eligible individual[s]." 26 U.S.C. § 6428B(g). "Eligible individual" is broadly defined to include those with no federal taxable income. § 6428B(c), (g)(1). Thus, the statute is "best interpreted as establishing the legal fiction that eligible taxpayers overpaid their [annual] taxes in an amount equal to the 'advance refund.'" Sarmiento v. United States, 678 F.3d 147, 156 (2d Cir. 2012). Even if the payments are not subject to garnishment, an issue we do not consider, they are subject to a turnover order under § 3664(n). See Kidd, 23 F.4th at 784 n.2.

The few courts to consider the issue have concluded that COVID-19 stimulus payments are the "receipt of substantial resources" under § 3664(n). See United States v. Long, No. 3:15-CR-30118, 2022 WL 703220, at * 4 (D.S.D. Mar. 9, 2022), and cases cited. The court in Long said our decision in Kidd "is not a problem" because prison wages were not at issue. Id. But it did not consider the words of § 3664(n) and the CARES Act "in their statutory context," the essence of our decision in Kidd. Here, the statutory context is the interaction of § 3664(n) with the CARES Act and ARPA. Viewed in this context, we see the issue as being whether Congress intended in the COVID-19 economic relief acts to pay millions of taxpayer dollars directly to crime victims who are entitled to mandatory restitution payments from incarcerated defendants. Many might consider this an easy question, given the widespread, legitimate sympathy for restitution victims. But the Executive Branch apparently does not consider it an easy question -- the Internal Revenue Service first declared that incarcerated persons were *not eligible* for CARES Act COVID-19 stimulus payments, an interpretation enjoined by a district court in a decision the

government did not appeal.  Scholl v. Mnuchin, 494 F. Supp. 3d 661 (N.D. Cal. 2020).  The district court should address this issue of law on remand.

Third, the district court ignored the limitation that § 3664(n) applies only to a person who "receives substantial resources," instead relying on the "any source" language to order turnover of the full $2,084.  However, what constitutes substantial resources is an issue that requires careful, case-specific analysis.  See Kidd, 23 F.4th at 787 & n.3; Woodring, 35 F.4th at 635 (citation omitted).

For these reasons, the district court's turnover order based on § 3664(n) must be vacated and remanded.  The government's turnover motion also argued the funds in Evans's trust account amounted to a "material change" in his economic circumstances that warrants modification or immediate payment under § 3664(k).  The district court did not rely on this provision, perhaps because the government had not complied with § 3664(k)'s notification requirement.  The government urges us to decide the issue on appeal because "Evans has made little progress toward paying his outstanding restitution."  We are not inclined to decide this fact-based issue in the first instance, and even if we were, the record on appeal is similarly undeveloped for us to make this determination.  The government may pursue the issue on remand.

## II.

In a *pro se* appellate filing entitled Supplemental Motion To Preserve Rights Guaranteed under Paroline v. United States and under Common Law, Evans renews his argument that Vicky has been fully compensated for the total loss found by the district court to be proximately caused by his child pornography trafficking offense -- $1,346,158.12 -- and therefore, applying common law tort principles, his restitution obligation has been satisfied.  The district court summarily rejected this argument:

> The restitution amount was not joint and several with any other person and thus it is an obligation which the Defendant alone must pay. It makes no difference if the victim has received restitution in other cases.

On appeal, side-stepping this reasoning, the government acknowledges that Vicky had received $1,588,094 in restitution payments as of March 12, 2019, see United States v. Erickson, 388 F. Supp. 3d 1086, 1095 (D. Minn. 2019), but argues the district court in its initial restitution order did not intend "to cap Vicky's losses at $1,346,158.l2," and recent decisions have determined that her total losses now exceed $4 million. Particularly because "the Paroline framework is very difficult -- if not impossible -- to apply in practice," Erickson, 388 F. Supp. 3d at 1088-89 & n.2, this is a difficult issue of first impression.

We begin with the language of the statute as construed by the Supreme Court in Paroline. The Violence Against Women Act provides that a district court sentencing a defendant who knowingly possessed child pornography in violation of 18 U.S.C. § 2252 shall order the defendant "to pay the victim . . . the full amount of the victim's losses as determined by the court." § 2259(b)(1) (2015). The categories of covered losses defined in § 2259(b)(3) (2015) include future losses and expenses such as lost income, medical expenses, and therapy or rehabilitation. "The burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the attorney for the Government." § 3664(e).

In Paroline, applying the canons of statutory construction, general tort law principles, and "common sense," the Supreme Court held that "[r]estitution is therefore proper under § 2259 *only to the extent the defendant's offense proximately caused a victim's losses*." 572 U.S. at 448 (emphasis added). With one Justice dissenting, the Court rejected the contention of the government and the child pornography victim "that the victim's entire losses from the ongoing trade in her images were suffered as a proximate result of Paroline's [§ 2252 possession] offense

for purposes of § 2259." Id. at 456 (cleaned up). It also rejected the view of three other dissenters that "[t]he statute, as written, allows no recovery." Id. at 472 (Roberts, C.J., dissenting). Instead, recognizing the difficulty of the inquiry, the majority held that "a court applying § 2259 should order restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses." Id. at 458.

Here, applying Paroline, the district court entered a restitution order finding that "the full amount of [Vicky's] losses" is $1,346,158.12. The language of § 2259(a) -- "the court shall order restitution *for any offense*" -- like the language of the Victim and Witness Protection Act of 1982 construed in Hughey v. United States, confirms "that the loss caused by the conduct underlying the offense of conviction establishes the outer limits of a restitution order." 495 U.S. 411, 420 (1990); see Paroline, 572 U.S. at 445. That is significant because "victims of crime are not entitled to double recovery for the same loss." United States v. Ruff, 420 F.3d 772, 775 (8th Cir. 2005) (citations omitted); see United States v. Thompson, 792 F.3d 273, 277 (2d Cir. 2015) ("[T]he MVRA caps the restitution award at the actual amount of the victim's loss." (citation omitted)); United States v. Nucci, 364 F.3d 419, 424 (2d Cir. 2004) ("[A]bsent a statutory command, there is no legal basis to permit an award that allows a victim to recover more than his due."). Evans properly raised this issue in opposing the government's turnover motion. "[A]t the time of any enforcement of the restitution order, [Evans] is free to present evidence to preclude recovery by way of restitution in the criminal case for the same conduct already compensated." United States v. Manzer, 69 F.3d 222, 230-31 (8th Cir. 1995). But in granting the government's turnover motion, the district court made no finding of how much in total Vicky has received from restitution. Given Evans's *prima facie* showing that Vicky has been fully compensated for the loss proximately caused by his offense, the district court erred in denying his motion for a hearing on this issue.

The government argues that the district court's comment at the August 2014 restitution hearing -- "my guess is that the future damages are going to be more" -- shows that the court did not intend "to cap Vicky's losses at $1,346,158.l2" in its restitution order. We have two problems with this contention. First, the court's task was to determine the "full amount" of Vicky's losses proximately caused by Evans's offense of conviction. As is often the case, that included estimating future losses and expenses. That the court recognized the likelihood of future loss and expenses does not mean that its restitution order failed to include this component of Vicky's full loss. Indeed, the court adopted the full loss determined by the attorney for the government, who had the burden of proof on this issue. Second, this contention would require *modifying* the "Total Loss" provision in the court's Amended Judgment in a Criminal Case. The government has not moved for an order modifying the final judgment. And whether the district court could modify its final judgment in this manner is open to serious doubt. See 18 U.S.C. § 3664(d)(5), (o); Fed. R. Cr. P. 35(a); United States v. Wyss, 744 F.3d 1214, 1217-19 (10th Cir. 2014), and cases cited; United States v. Harvey, 20 F.4th 71, 76-77 (1st Cir. 2021) (district court lacked inherent authority to modify its final criminal judgment by substituting a different named restitution payee).

The government further argues that recent decisions have determined that her total losses now exceed $4 million. It urges us to be guided by an amendment to § 2259 enacted in the Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, several years after the Paroline decision and Evans's restitution order:

> A victim's total aggregate recovery pursuant to this section shall not exceed the full amount of the victim's demonstrated losses. *After the victim has received restitution in the full amount of the victim's losses as measured by the greatest amount of such losses found in any case involving that victim* that has resulted in a final restitution order under this section, *the liability of each defendant* who is or has been ordered to pay restitution for such losses to that victim *shall be terminated*. The

> court may require the victim to provide information concerning the amount of restitution the victim has been paid in other cases for the same losses.

18 U.S.C. § 2259(b)(2)(C) (emphasis added). We decline this invitation for three reasons. First, retroactive application of this method of determining a victim's "full loss" would likely increase Evans's criminal punishment, creating Ex Post Facto Clause concerns. No doubt recognizing this danger, Congress provided that defendants who committed child pornography offenses prior to the date of enactment but are sentenced thereafter "shall be subject to the statutory scheme that was in effect at the time the offenses were committed." 18 U.S.C. § 2259B(d). That principle applies with even greater force to defendants like Evans who committed an offense *and were sentenced* prior to enactment.

Second, even if the amendment applied, interpreting it literally appears to be contrary to the holding in Paroline that restitution is "proper under § 2259 *only to the extent the defendant's offense proximately caused a victim's losses.*" 572 U.S. at 448 (emphasis added). If Vicky's full loss as determined in a case after Evans was sentenced is greater than the full loss determined for Evans's offense of conviction, the Supreme Court may decide that permitting that loss to increase the amount Vicky can receive before Evans's restitution obligation terminates would overrule Paroline's core causation holding, implicating Ex Post Facto and double jeopardy concerns.

Third, courts that have found full losses exceeding $4 million in recent cases have simply adopted estimates prepared by Vicky's attorneys, estimates that include over $3 million in "disaggregated medical expenses." United States v. Block, No. CR. 17-50068, 2020 WL 1322067, at *6 (D.S.D. Mar. 20, 2020) (cleaned up). By contrast, in determining the amount of restitution in sentencing the defendant in Erickson, Chief District Judge Schiltz did not accept these disaggregated medical expenses. 388 F. Supp. 3d at 1093 n.13. After careful analysis, the court concluded

"the expert's estimates of increased medical costs are unduly speculative and insufficiently explained and documented." Id. at 1094. The court reduced its estimate of Vicky's total loss from the $4,822,405.13 urged by Vicky and the government to $1,556,312.13. Id. at 1093-95. We agree that is the proper way to apply Paroline. In addition, to properly limit restitution to the full loss proximately caused by an earlier defendant's offense, the liability of a later defendant ordered to pay restitution should be disregarded unless the losses in his case were *caused by Evans*, not simply payable to Vicky.

For these reasons, the district court must determine on remand whether Vicky has been fully compensated for the trafficking losses proximately caused by Evans's offense. If she has, then amended § 2259(b)(2)(C) states the governing rule: Evans's liability to pay the restitution set forth in his February 2014 Amended Judgment in a Criminal Case "shall be terminated." We leave for the district court's determination on remand Evans's requests for appointment of counsel and discovery.

### III.

The district court Order of September 2, 2021 is vacated and the case is remanded for further proceedings not inconsistent with this opinion.

_____